**Lawrence H. LEVNER, Plaintiff,**

v.

**Prince Alwaleed Bin Talal Bin Abdulaziz Al SAUD and Citicorp, Defendants.**

No. 92 Civ. 7122 (LAP).

United States District Court, S.D. New York.

Oct. 17, 1994.

Sidney B. Silverman, Silverman, Harnes & Obstfeld, New York City, for plaintiff.

Eugene F. Bannigan, Morgan, Lewis & Bockius, New York City, for defendant Saud.

Joseph T. McLaughlin, Shearman & Sterling, New York City, for defendant Citicorp.

## MEMORANDUM AND ORDER

PRESKA, District Judge.

Defendant, Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud ("Alwaleed"), moves for summary judgment on Count I of the amended complaint, and both Alwaleed and Citicorp move to dismiss Counts II through IV. The plaintiff, Lawrence H. Levner ("Levner"), moves for leave to file a second amended complaint. For the following reasons, the defendants' motions are granted and Levner's motion is denied.

### Background

Levner, the owner of certain Citicorp common stock, has commenced this derivative action against Alwaleed and Citicorp, a bank holding company incorporated in Delaware. The original complaint sought an accounting of all profits made from a 1992 sale and repurchase of Citicorp common stock pursuant to § 16(b) of the Securities and Exchange of 1934, 15 U.S.C. § 78p(b) (the "Exchange Act"). The complaint also sought damages resulting from Alwaleed's failure to comply with the filing requirements of § 16(a) of the Exchange Act, 15 U.S.C. § 78p(a).

The complaint alleged that, on February 19, 1992, Alwaleed sold one million shares of Citicorp common stock on the open market at the price of $17.00 per share and that, on March 5, 1992, Alwaleed repurchased one million shares of common stock on the open market at an average price of $16.68. Plaintiff claims that this short-swing profit violated § 16(b). (Complaint ¶ 9.) Alwaleed moved to dismiss this complaint pursuant to Fed.R.Civ.Pro. 12(b)(6). Pursuant to Rule 12(b), upon notice to all parties, the Court converted the motion to dismiss to a motion for summary judgment under Fed.R.Civ.Pro. 56. The parties were provided the opportunity to supplement their submissions on the motion to dismiss. In response, plaintiff submitted a Rule 56(f) affidavit pursuant to Fed. R.Civ.Pro. 56(f) seeking additional discovery. I denied this request on May 17, 1993.

Thereafter, plaintiff was granted leave to file an amended complaint. The new complaint deleted the § 16(a) claim, retained the § 16(b) claim, and added three new claims. As additional claims, the amended complaint alleged violations of § 10(b) and § 13(d) of the Exchange Act, 15 U.S.C. §§ 78m(d), 78j(b), and common law fraud. These new claims related to the following transactions that occurred in 1991. On February 21, 1991, Alwaleed entered into a private purchase agreement ("Purchase Agreement") with Citicorp for the purchase by Alwaleed of 11.8 million depository shares, each of which represented one/two-thousandth of a share of Citicorp's Series 12 convertible preferred

stock ("preferred stock"). The purchase was equivalent to 5,900 shares of preferred stock and was made at an aggregate cost of $590 million. (Amended Complaint ¶ 5.)

The amended complaint alleges that Alwaleed made false and misleading statements in the Schedule 13D filed in connection with this initial purchase of preferred stock pursuant to 15 U.S.C. § 78m(d).[1] Specifically, the amended complaint alleges that the following statements contained in Alwaleed's Schedule 13D were false: (i) that he is the beneficial owner of the convertible preferred stock, and (ii) that the source of consideration paid for such stock was his personal funds. (Amended Complaint ¶¶ 28, 31, 39.) The amended complaint alleges that Alwaleed violated § 10(b) by purchasing the preferred stock based on these materially misleading representations. (Amended Complaint ¶¶ 34, 36, 40.) In addition to the accounting for the alleged short-swing profits in 1992, the amended complaint seeks recision of Alwaleed's purchase of the preferred stock and an injunction requiring Alwaleed to file an amended Schedule 13D making full and accurate disclosure.

Defendants have made several motions in response to the complaint. First, Alwaleed notified the Court by letter that he wished to renew his motion for summary judgment on the § 16(b) claim contained in the amended complaint. In a separate motion, Alwaleed has moved to dismiss the additional claims contained in Counts II through IV for failure to comply with Fed.R.Civ.P. 9(b), 11, and 23.1. Citicorp also has moved to dismiss these new claims for failure to comply with Rule 23.1.

### Discussion

A. Counts II through IV.

Both Citicorp and Alwaleed move to dismiss Counts II through IV of the amended complaint, which assert violations of § 13(d), § 10(b), and common law fraud, for failure to allege with particularity the efforts made by plaintiff shareholder to obtain the action plaintiff desires from the directors of the corporation, in violation of Fed.R.Civ.P. 23.1. Additionally, they move to dismiss because the amended complaint fails to allege with particularity that Citicorp wrongfully rejected plaintiff's demand.

A derivative action permits a shareholder of a corporation to bring suit "to enforce a *corporate* cause of action against officers, directors and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970) (emphasis in original). To prevent abuse of this right and to permit directors to retain their traditional status as "conductors of the corporation's affairs," *Elfenbein v. Gulf & Western Indus.*, 590 F.2d 445, 450 (2d Cir.1978), courts have mandated that the shareholder demonstrate " 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.' " *Kamen v. Kemper Financial Serv.*, 500 U.S. 90, 96, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (quoting *Ross*, 396 U.S. at 534, 90 S.Ct. at 736).[2]

The amended complaint, which was filed on May 4, 1993, alleges, that

[o]n August 3, 1992, plaintiff demanded that Citicorp directly bring the claims alleged [in the amended complaint] with respect to his sale and repurchase of Citicorp stock in violation of § 16(b), and with respect to Alwaleed's failure timely to file documents required by the SEC, concerning, *inter alia*, the transfer by Alwaleed, in the spring or early summer 1992, of his Citicorp stock to a Cayman Islands Corporation he purported to own. . . . *In light of [this transfer], plaintiff also requested*

---

**1.** Section 13(d) of the Exchange Act "requires anyone who, directly or indirectly, becomes the beneficial owner of more than 5% of any registered equity security, within ten days, to file with the SEC and the issuer and the stock exchange where the security is traded a Schedule 13D containing all of the information required by the SEC's rules and regulations." *Todd Shipyards Corp. v. Madison Fund*, 547 F.Supp. 1383, 1386 (S.D.N.Y.1982).

**2.** This motion to dismiss pertains only to the claims for violations of § 13(d), § 10(b) and common law fraud, and not the 16(b) claim; Section 16(b) has been held to create a private right of action notwithstanding a decision of the board of directors not to sue. *See Burks v. Lasker*, 441 U.S. 471, 484 n. 13, 99 S.Ct. 1831, 1840, 60 L.Ed.2d 404 (1979).

*that Citicorp take action with respect to the possibility that Alwaleed was acting on behalf of others in connection with his purported purchase of the Citicorp convertible shares....*

(Amended Complaint ¶ 17 (emphasis added).) Accordingly, the amended complaint clearly alleges that a demand was made for the § 16(b) claim involving the 1992 transaction. The issue is whether the underscored language alleges with sufficient particularity that a demand was made upon the Citicorp board for the claims arising out of Alwaleed's 1991 transaction involving the preferred stock.

■ In deciding this issue, the well-pleaded allegations of the complaint are accepted as true. *See Grobow v. Perot,* 539 A.2d 180, 186 (Del.Supr.1988). Rule 23.1[3] is not the source of the demand requirement but, rather is the procedural manifestation of the state law of corporate governance regarding the right of a shareholder to bring a derivative suit on behalf of a corporation. *See RCM Sec. Fund v. Stanton,* 928 F.2d 1318, 1329 (2d Cir.1991); *Levine v. Smith,* 591 A.2d 194, 200 (Del.Supr.1991). The substantive requirements of demand are governed by the law of the state of incorporation, in this case Delaware. *See Stoner,* 772 F.Supp. at 795–96 (citing *RCM,* 928 F.2d at 1329).

■ The demand requirement is based on the "bedrock" principle of Delaware corporate governance law that "the directors of a corporation and not its shareholders manage the business and affairs of the corporation." *Levine,* 591 A.2d at 200. Consequently, a plaintiff's "pleading burden under Rule 23.1 is also more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Id.*[4] Under Rule 23.1, "conclusory 'allegations of fact or law [that are] not supported by allegations of specific fact may not be

3. Rule 23.1 provides in pertinent part,

   The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for plaintiff's failure to obtain the action.
   Fed.R.Civ.Pro. 23.1.

taken as true.'" *Id.* (quoting *Grobow,* 539 A.2d at 187).

### 1. Adequacy of Demand.

■ The purpose behind the demand requirement is to give the directors of a corporation "the initial opportunity to redress the wrong." *Allison on Behalf of G.M.C. v. General Motors Corp.,* 604 F.Supp. 1106, 1117 (D.Del.), *aff'd,* 782 F.2d 1026 (3d Cir.1985) (table). Consequently, at a minimum, the demand made upon the board of directors "must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." *Id.* The shareholder generally need not specify the legal theory, but only the facts demonstrating the wrong. *See id.*

■ In this case, the demand clearly did not meet the minimum requirements of Rule 23.1. The demand does identify Alwaleed as the alleged wrongdoer. As the factual basis of the wrongful acts, however, the amended complaint merely alleges that Alwaleed may have been acting on behalf of others when he purchased the preferred stock in 1991, (Amended Complaint ¶ 17), a suspicion based on Alwaleed's 1992 transfer of his common stock to a Cayman Islands corporation allegedly owned by Alwaleed. *Id.* Plaintiff requested that Citicorp "take action" with respect to this possibility. *Id.* The demand did not suggest, however, any remedial relief. The factual basis of the demand to take action, "the possibility that Alwaleed was acting on behalf of others," simply was not adequately particular to alert the Citicorp board as to the corporate injury, or the specific relief sought. Accordingly, the motion to dismiss Counts II through IV is granted for failure to make an adequate demand upon the board pursuant to Fed.R.Civ.P. 23.1.

4. The procedural rule at issue in *Levine* is the Delaware Court of Chancery Rule 23.1. 591 A.2d at 210–11. However the court discussed the standard of Court of Chancery Rule 23.1 in terms of the federal rule of the same number. *See id.* (citing *Allison,* 604 F.Supp. at 1116 (Court of Chancery Rule 23.1 is either identical to or consistent with the principles behind Fed. R.Civ.P. 23.1)).

## 2. Wrongfulness of Refusal.

As an alternative basis for my decision, I also find that the plaintiff has failed to plead with particularity that the board's refusal of his demand was wrongful. In a shareholder derivative suit, in order to conform to the requirements of Rule 23.1, the shareholder plaintiff is required to allege with particularity "legally sufficient reasons to call into question the validity of the Board of Directors' exercise of business judgment." *Allison*, 604 F.Supp. at 1121; *see also Levine*, 591 A.2d at 211 (plaintiff must plead with particularity, in accordance with Federal Rule 23.1, facts creating a reasonable doubt that a board's decision is protected by the business judgment rule). The Second Circuit has commented that, under Delaware law, the directors' decision "will be shielded by the business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit ... was based on an unreasonable investigation." *RCM*, 928 F.2d at 1328. The *RCM* court noted that "few, if any, plaintiffs surmount this obstacle." *Id.*

Once the shareholder plaintiff makes a demand upon the directors before filing suit, he or she loses the ability to claim demand futility: "A shareholder plaintiff, by making demand upon a board before filing suit, 'tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation.'" *Levine*, 591 A.2d at 212 (quoting *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del.Supr.1990)). In this case, plaintiff does not dispute the good faith of the Citicorp board, but rather the reasonableness of Citicorp's investigation of his demand. In the *Levine* court's words, the standard of "[r]easonableness implicates the business judgment rule's requirement of procedural due care; that is, whether [the Citicorp board] acted on an informed basis in rejecting [Levner's] demand." *Id.* at 213.

Even assuming *arguendo* that plaintiff had made an adequate demand upon the Citicorp board, the issue becomes whether the board's refusal of that demand was wrongful. The only assertion of the amended complaint on this issue is that Citicorp's Executive Vice President of Legal Affairs "refused plaintiff's demand on the basis of a letter issued by Alwaleed's attorneys." (Amended Complaint ¶ 18.) Plaintiff did not make any allegations as to what was in this letter, whether the board relied on the letter, or why any such reliance would be inappropriate. Thus, the amended complaint fails to assert with particularity that the board's refusal of the demand was wrongful. In addition, from the face of the amended complaint, it is evident that the Citicorp board did not make an uninformed decision to refuse to take action and, in fact, did initiate an investigation into this matter.

Even a charitable review of the allegations of the amended complaint fails to rebut the presumption that the refusal is protected by the business judgment rule. *See Ryan v. Aetna Life Ins. Co.*, 765 F.Supp. 133, 139 (S.D.N.Y.1991) (finding that the board's decision is subject to a gross negligence standard under Delaware law). Because the allegations of the amended complaint are insufficiently particular and fail to raise any legally sufficient reasons to doubt the adequacy of the board's investigation of Levner's demand, the motion to dismiss Counts II through IV alternatively is granted on this ground.

## 3. Leave to Replead.

Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." Reasons to deny leave to amend include undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Defendants argue that granting leave to amend in this case would be futile, and, therefore, should be denied.

Plaintiff attaches the proposed second amended complaint in support of its motion for leave to amend. (Affidavit of Sidney B. Silverman Sworn to on July 6, 1993 ("Silverman Aff.").) The proposed second amended complaint newly asserts that after receiving the demand refusal letter, "plaintiff discussed with defendant Citicorp's attorneys, the new

claims asserted in the first amended complaint." (Proposed Second Amended Complaint ¶ 20.) During these discussions, plaintiff allegedly disclosed confidential information that Alwaleed was acting on behalf of others. *Id.* Plaintiff allegedly also requested that "a demand be conveyed to defendant Citicorp" to take action with respect to the claims set forth in the amended complaint. *Id.* It is alleged further that Citicorp "agreed to consider plaintiff's demands," and on May 27, 1993, Citicorp informed plaintiff that his demand was denied in all respects. *Id.* The proposed second amended complaint next alleges that this refusal was wrongful because "[d]emand was refused on grounds that made it clear that the directors did not, and could not have made an adequate investigation of the information given Citicorp by plaintiff's counsel as required by Delaware law." (Proposed Second Amended Complaint ¶ 21.) Once again, however, the plaintiff fails to allege which "grounds" show that an inadequate investigation was made.

As stated above, bare conclusory allegations of wrongful refusal will not satisfy the pleading requirements of Rule 23.1. *See Allison,* 604 F.Supp. at 1122. Although the allegations in the proposed second amended complaint regarding wrongfulness of refusal are more *lengthy* than those contained in the amended complaint, they are no more particular. Instead, once again, the allegations are conclusory and not supported by specific facts sufficient to create a reasonable doubt that Citicorp acted in an informed manner. *See, e.g., Levine,* 591 A.2d at 213 (allegations arguably more particularized than those contained here found insufficient). Accordingly, I find that leave to amend would be futile; plaintiff's motion for leave to amend the complaint, therefore, is denied. *See, e.g., Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (court should deny leave to amend where the grant would be futile); *Heineman v. Datapoint Corp.,* [1991–1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,529, at 92,428, 1991 WL 279371 (Del.Ch. Dec. 23, 1991) ("[t]o permit him 'another bite out of the apple' now would negate one of the purposes of Rule 23.1, which is to permit the Court to promptly dispose of meritless litigation").[5]

### B. Section 16(b) Claim.

█ Defendant Alwaleed moves for summary judgment on plaintiff's § 16(b) claim, 15 U.S.C. § 78p(b), which is contained in Count I of the amended complaint. Under Rule 56(c), summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. § 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law identifies those facts that are material. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The moving party has the burden of demonstrating that no genuine issue of fact exists. *See Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether any genuine issue of material fact is presented, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *See Gladstone v. Fireman's Fund Ins. Co.,* 536 F.2d 1403 (2d Cir.1976); *Walther v. Bank of New York,* 772 F.Supp. 754 (S.D.N.Y.1991).

Once the moving party demonstrates the absence of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). "Only when no reasonable trier of fact could

---

5. Defendant Alwaleed additionally moves to dismiss the amended complaint on the ground that it fails to comply with Fed.R.Civ.P. 9(b) and that plaintiff's counsel failed to comply with Fed. R.Civ.P. 11. Because I find that Counts II through IV should be dismissed for failure to comply with Rule 23.1, the motion to dismiss Counts II through IV on these additional grounds need not be addressed.

find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992).

Section 16(b) imparts strict liability upon a "beneficial owner" of common stock who realizes a profit from any purchase and sale, or any sale and purchase, of such stock within a period of less than six months.[6] Section 16(a) defines a beneficial owner as "[e]very person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security." In addition, one who has the right to acquire more than 10% of common stock, *e.g.,* through a hypothetical conversion of presently convertible securities, is also deemed a beneficial owner. *See* 15 U.S.C. § 78c(a)(11); *see, generally, Chemical Fund v. Xerox Corp.,* 377 F.2d 107, 111–12 (2d Cir.1967); *American Standard v. Crane Co.,* 346 F.Supp. 1153 (S.D.N.Y.1972), *rev'd on other grounds,* 510 F.2d 1043 (2d Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975); 17 C.F.R. § 240.13d–3(d), *as amended by* SEC Exchange Act Release No. 14692.

In this case, it is undisputed that Alwaleed owns 4.8% of Citicorp common stock. It is also undisputed that pursuant to the Purchase Agreement between Citicorp and Alwaleed, Alwaleed acquired 11.8 million depository shares in Citicorp each representing one/two-thousandth of a share of Citicorp's Series 12 convertible preferred shares, amounting to 5,900 shares of convertible preferred stock. Finally, it is undisputed that the 5,900 shares of preferred stock were convertible into 36,875,000 shares of common stock, representing approximately 9.2% of common stock. If converted, therefore, Alwaleed would be the beneficial owner of approximately 14% of Citicorp common stock.

Defendant argues that the terms of the Purchase Agreement and the legal requirement of prior approval of the Federal Reserve Board ("FRB") represent material contingencies preventing the Court from assuming that Alwaleed is the beneficial owner of the shares he would be entitled to own if these contingencies were satisfied. *See, e.g., Transcon Lines v. A.G. Becker,* 470 F.Supp. 356, 371 (S.D.N.Y.1979) (exercise of right to beneficial ownership contingent on a future event and therefore defendant not deemed beneficial owner in context of § 13(d) claim).[7] Plaintiff contends that FRB approval pursuant to Board regulations [8] is required only to *acquire* convertible securities, but not for the *right to convert* the preferred into common. Therefore, plaintiff argues, because Alwaleed already had acquired the convertible stock, there was no material contingency preventing Alwaleed from converting his preferred stock.

---

**6.** Section 16(b) provides, in pertinent part,

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner ... any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner ... in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.... This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or sale and purchase, of the security involved....

15 U.S.C. § 78p(b).

**7.** In *Transcon Lines v. A.G. Becker,* 470 F.Supp. 356, 369 (S.D.N.Y.1979), the plaintiff alleged that defendant violated § 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), by failing to file a Schedule 13D despite beneficial ownership. Under § 13(d), a person is deemed the beneficial owner of a security "if that person has the right to acquire beneficial ownership of such security, as defined in Rule 13d–3a ... within sixty days...." The court found the defendant did not come under this definition because his right to acquire was contingent upon a future event, either divesting himself of certain other securities or obtaining the approval of the Interstate Commerce Commission for the acquisition. *See id.* at 371.

**8.** The applicable regulation, "Regulation Y," provides:

> Prior notice requirement. (1) Any person acting directly or indirectly, or through or in concert with one or more persons, shall give the [FRB] 60 days' written notice, ... before acquiring control of a state member bank or bank holding company....

12 C.F.R. § 225.41(a).

Resolving this motion requires a review of the somewhat tangled factual history regarding Alwaleed's business transactions with Citicorp. On February 21, 1991, Alwaleed and Citicorp entered into the Purchase Agreement, pursuant to which Alwaleed purchased 11,800,000 depository shares. Under § 8 of the Purchase Agreement, Alwaleed covenanted, *inter alia,* that he would not acquire beneficial ownership of more than 10% of Citicorp common stock for the Standstill Period ("Standstill Agreement"). (Declaration of Thomas J. Pax, Ex. 1 ("Pax Decl.").) The Standstill Period expires at the earliest of (a) five years, (b) the occurrence of any time at which dividends payable on the preferred stock are in arrears for two consecutive dividend periods (not less than 180 days), or (c) the occurrence of a Significant Event.[9]

Immediately prior to February 21, 1991, Alwaleed's representatives discussed the above transaction with the staff of the Board of Governors of the Federal Reserve System (the "Board"). (Pax Decl., Ex. 5.) Alwaleed requested a determination by the Board that the acquisition of the convertible preferred stock would not require either Board approval or the prior filing of a Notice of Change in Bank Control, pursuant to 12 U.S.C. § 1817(j)) and 12 C.F.R. 225.41 ("Notice"). (Pax Decl., Ex. 6.) In making its determination, the Board considered the limitations placed on Alwaleed's actions pursuant to the agreement with Citicorp such that

> the preferred shares are convertible only if, upon conversion, the shares, combined with any voting common stock of Citicorp owned by the holder, represent less than 10 percent of the voting common stock of Citicorp."

*Id.* In addition, Alwaleed made several other commitments to the Board concerning his proposed acquisition of the preferred stock. In response, in a letter dated February 21, 1991, the Board issued its determination that Alwaleed

was not required to file a Notice in Change In Bank Control prior to acquiring the preferred stock, but that he would be required to do so no later than ten months after such acquisition if he had not by that time reduced his holdings in the common stock of Citicorp (on a fully converted basis) to below 10%.

*Id.* at 4–5 and Ex. E.

Pursuant to the agreements with the Board, Alwaleed filed his Notice after ten months, in January 1992. At that time, he had not reduced his holdings of Citicorp common stock (on a fully converted basis) to below 10%, finding that such reduction would not be in his economic interest. (Pax Decl., Ex. 2.) In March 1992, Alwaleed filed a Schedule 13D with the Securities and Exchange Commission, in which he reported that he was deemed to beneficially own approximately 14% of Citicorp's common stock. *Id.* In both the Notice and the Schedule 13D, Alwaleed noted that he did not presently intend to exercise his conversion rights.

In December 1992, Alwaleed filed another Schedule 13D amending the Schedule 13D filed in March 1992. (Pax Decl., Ex. 3.) In this form, Alwaleed stated that "[i]f certain regulatory approvals were received, including [FRB approval], the Preferred Stock would be convertible into 36,875,000 shares" of common stock, representing approximately 9.2% ownership. *Id.* at 1–2. The form explained that the initial Schedule 13D erroneously reported that Alwaleed was deemed the beneficial owner of all shares of common stock that could be acquired upon conversion, or approximately 14%. In fact, Alwaleed noted that his right to convert was limited to 10% ownership by the Purchase Agreement, the Change in Bank Control Act, 12 U.S.C. § 1817(j), and FRB regulations promulgated thereunder. (Pax Decl., Ex. 3.)[10] Although Alwaleed filed the Notice, he did not obtain FRB approval during the period of the short-

---

9. A "Significant Event," as defined by the agreement, occurs (i) upon the acquisition by any person other than Alwaleed of more than 50% beneficial ownership; (ii) if directors at the time of the Purchase Agreement cease to constitute a majority; (iii) upon sale of substantially all Citicorp assets. (Pax Decl., Ex. 1, at 25.)

10. Plaintiff argues that because Alwaleed could become a 10% owner under the Purchase Agreement, he should be deemed a beneficial owner under § 16(b). However, the statute plainly limits its liability to those whose ownership *exceeds* 10%. Accordingly, I reject this argument.

.. no

swing sale and purchase. *Id.*[11] Therefore, the amended Schedule 13D reported Alwaleed to be deemed the beneficial owner of 9.9% of common stock, which is the aggregate amount he would be allowed to own under the applicable regulations and the Purchase Agreement.[12]

Consequently, the initial Schedule 13D reveals that in March 1992, Alwaleed erroneously believed that, notwithstanding the Standstill Agreement and the need for FRB approval, he immediately could convert his preferred stock subject only to the conditions agreed to in the Board's February 21, 1991 letter limiting Alwaleed's control over Citicorp. The short-swing sale and purchase took place in February and March of 1992. After this transaction, the amended forms were filed clarifying that Alwaleed was not a beneficial owner because his preferred stock was not immediately convertible.

In reviewing the various relevant documents, it is apparent that, notwithstanding Alwaleed's original filing, Alwaleed was bound by the Standstill Agreement with Citicorp not to convert his preferred stock until the earliest of (a) five years from the date of the closing of the purchase of the preferred stock, (b) the occurrence of any time when dividends are in arrears for two consecutive dividend periods (totalling not less than 180 days), or (c) upon the happening of a Significant Event.[13] In addition, although Alwaleed had filed his sixty-day Notice, the Board had not yet approved such Notice during the sale and purchase period, (Pax Decl., Ex. 7), and, thus, Alwaleed was legally prevented from converting his preferred stock. Accordingly, Alwaleed has demonstrated that his preferred stock was not immediately convertible when he engaged in the short-swing sale and purchase. Plaintiff does not offer any evidence to refute this.

The issue before me is whether the owner ·of preferred stock, which is not immediately convertible due to material contingencies beyond the owner's control, is nonetheless a "beneficial owner" under § 16(b) where the owner would hold over 10% of a corporation's common stock if immediately convertible.[14] Section 16(b) is a flat rule of strict liability "designed to minimize difficulties of proof." *C.R.A. Realty Corp. v. Goodyear Tire & Rubber Co.,* 705 F.Supp. 972, 976 (S.D.N.Y.), *aff'd,* 888 F.2d 125 (2d Cir.1989) (citing *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972)). As stated by the Second Circuit, "[i]t might be said that Congress decided in order to throw out the bathwater that the baby had to go too." *Blau v. Lamb,* 363 F.2d 507, 515 (2d Cir.1966), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967). Accordingly, the Supreme Court has stressed a narrow approach to the statutory construction of § 16(b). *See Reliance Electric,* 404 U.S. at 422, 92 S.Ct. at 599 (1972).

11. On April 27, 1992, the Board issued a letter stating that it required more than the 60 days provided for in Section 225.41(a) to act upon Alwaleed's notice. This additional period of time is provided for in § 225.43(c)(2)(iii). (Pax Decl., Ex. 7.) This extends the review process beyond the period at issue in the amended complaint, *i.e.,* Alwaleed could not have obtained FRB approval until after the relevant time period.

12. A second amended Schedule 13D was filed in February 1993 supplementing "Item 4" (entitled "Purpose of Transaction") of the original Schedule 13D. (Pax Decl., Ex. 4.) This form declared that the January 7, 1992 Notice was withdrawn on February 18, 1993 and that Alwaleed's present intention was to maintain his beneficial ownership at 9.99% on a fully converted basis. *Id.* at 3.

13. Although a Significant Event or dividend arrearages could have occurred sooner than five years, *e.g.,* before the short-swing sale and purchase, these contingencies were beyond Alwaleed's control and rendered the preferred stock not presently convertible.

14. I find it irrelevant that, at the time of the alleged violative transaction, the filed Schedule 13D and Notice represented Alwaleed to be a beneficial owner. The purpose of § 16(b) is to deter "insider" trading by imposing strict liability. *See Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972). Regardless of Alwaleed's representative's interpretation of the law, liability will not be imposed unless he meets the statutory definition of an insider. *See id.; see also Chemical Fund v. Xerox Corp.,* 377 F.2d 107, 112 (1967) (finding that defendant's filing "cannot fairly be read to dispose of the question of statutory interpretation presented in this case"); *Levy v. Seaton,* 358 F.Supp. 1, 4 (S.D.N.Y.1973) (filing "would not be dispositive if it was an unnecessary act based on a mistake of law").

Although Alwaleed held preferred stock that, after hypothetical conversion, would make him a beneficial owner of over 10% of Citicorp common stock when combined with the shares of Citicorp common stock he already owned, I find it dispositive as a matter of law that the stock was not "presently convertible." *See, generally, Simon v. Sunasco,* [1970 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 92,547, at ¶ 98,510 (S.D.N.Y. 1970) (relying on *Chemical Fund,* court looked to terms of exchange plan of "special stock" to discern if stock was presently convertible); *Citadel Holding Corp. v. Roven,* 26 F.3d 960 (9th Cir.1994) (upholding summary judgment on § 16(b) claim where options were not "presently exercisable"). Under a strict construction of the statute, therefore, Alwaleed should not be considered a "beneficial owner" for purposes of § 16(b)—he did not hold preferred stock that was immediately convertible. *See T–Bar v. Chatterjee,* 693 F.Supp. 1, 6–7 (S.D.N.Y.1988) (even though shareholder was firmly committed to purchase of convertible debentures, did not become a 10% shareholder until the closing date).

This holding is consistent with the policy behind § 16(b) which was enacted to prevent "insiders" or those who, by virtue of their potential for control, are able to receive information regarding the company before it is made public. *See Reliance,* 404 U.S. at 423, 92 S.Ct. at 599; *see also Blau,* 363 F.2d at 519 ("[A] court should first inquire whether a given transaction could possibly tend to accomplish the practices § 16(b) was designed to prevent."). Alwaleed's control over Citicorp, a bank holding company, was subject to federal banking regulations. *See* 12 U.S.C. § 1817(j). Among other things, § 1817(j) provides that no person shall acquire control of any insured depository institution through a disposition of voting stock in the institution unless the appropriate federal banking agency has been given sixty days prior notice of the proposed acquisition and, within that time period, the agency has not issued a notice disapproving the proposed acquisition.

In 1991, Alwaleed proposed to the Board that he be allowed to make his investment in Citicorp without prior Notice and Board approval. In order to approve of this proposal, the Board had to be satisfied that Alwaleed would not gain control over Citicorp notwithstanding his investment, pursuant to banking regulations. It is apparent from the February 21, 1991 letter of the FRB that Alwaleed agreed that he would not exercise control over Citicorp. (Pax Decl., Ex. 6.)

Alwaleed agreed, *inter alia,* that, without prior Board approval, he would not (a) exercise or attempt to exercise control over the management or policies of Citicorp, (b) seek or accept representation on the board of directors, (c) propose a director or slate of directors in opposition to nominees proposed by the management or board of directors, or (d) exercise any voting rights incident to the preferred stock relating to the election of directors. *Id.* Because of these and other agreements, the Board did not require Alwaleed to file prior Notice. Particularly relevant to the Board's determination was the fact that Alwaleed's right to convert his preferred stock was limited, satisfying the Board that his control of Citicorp was also limited. All of these factors lead to the conclusion that Alwaleed did not hold the position of an "insider," as contemplated by Congress when enacting § 16.

Accordingly, for the foregoing reasons, Alwaleed's motion for summary judgment on the § 16(b) claim contained in Count I of the amended complaint is granted, and this claim is dismissed.

### Conclusion

Defendants' motion to dismiss Counts II through IV of the amended complaint is granted, plaintiff's motion for leave to replead is denied, and defendant Alwaleed's motion for summary judgment of Count I of the amended complaint is granted. The action is dismissed in its entirety.

SO ORDERED.