Margaret **GWOZDZINSKY**, Derivatively on Behalf of REVCO D.S., INC., Plaintiff,

v.

**MAGTEN ASSET MANAGEMENT CORP.; Talton R. Embry; General Motors Hourly–Rate Employees Pension Plan; General Motors Retirement Program for Salaried Employees; L.A. Fire & Police Pension Systems–Fund 2525; Western Union Pension Trust; The Bakal Company; The Core Investment Limited Partnership; Levi Family Trust; H. Allen Luray; Pearlstone 54 Trust; Ellen's Trust U/W J.H. Pearlstone; Jennifer Russell and Revco D.S., Inc., Defendants.**

No. 95 Civ. 3023 (RWS).

United States District Court, S.D. New York.

Feb. 6, 1996.

Bragar & Wexler, P.C. (Paul D. Wexler, of counsel), New York City, Ostrager, Chong & Flaherty, P.C., New York City, for Plaintiff.

Richards Spears Kibbe & Orbe (Lee S. Richards, Leanore Barth, of counsel), New York City, for Defendants Magten Asset Management Corp., Talton R. Embry, General Motors Hourly–Rate Employees Pension Plan, General Motors Retirement Program, L.A. Fire & Police Pension Systems–Fund 2525, Western Union Pension Trust, the Bakal Company, The Core Investment, L.P., Levi Family Trust, H. Allen Luray, Pearlstone 54 Trust, Ellen's Trust U/W J.H. Pearlstone, and Jennifer Russell.

### OPINION

SWEET, District Judge.

Defendants Magten Asset Management Corp. ("Magten"), Talton R. Embry ("Embry"), General Motors Hourly Rate Employees Pension Plan, General Motors Retirement Program for Salaried Employees, L.A. Fire & Police Pension Systems–Fund 2525, Western Union Pension Trust, The Bakal Company, The Core Investment Limited Partnership, Levi Family Trust, H. Allen

Luray, Pearlstone 54 Trust, Ellen's Trust U/W J.H. Pearlstone, and Jennifer Russell (collectively, the "Magten Defendants," and excluding Magten and Embry, the "Magten Advisory Clients" or the "Clients") have moved for summary judgment pursuant to Fed.R.Civ.P. 56 to dismiss this action. For the reasons set forth below, the motion is granted.

### Parties

Plaintiff Margaret Gwozdzinsky ("Gwozdzinsky") is a Pennsylvania resident who is the owner of common stock of Revco D.S., Inc. ("Revco"). She is bringing this suit as a derivative action on behalf of Revco under section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), to recover "short-swing" insider profits earned as a result of purchases and sales of the common stock of Revco.

Defendant Magten is a New York corporation which is a registered investment advisor with its principal place of business at 35 East 21 Street, New York, New York.

Embry is Magten's sole officer and director and is a registered investment advisor. The Amended Complaint in this action states that he is the chairman of Revco's board of directors.

The remaining defendants are alleged to be investment advisory clients of Magten and Embry who bought and sold stock in Revco as described below.

### Prior Proceedings

The original complaint in this action was filed on April 28, 1995, naming Magten, Embry and John Does 1–20. Limited discovery proceeded and the amended complaint (the "Complaint") was filed on September 11, 1995 which added allegations and named the John Doe defendants.

The present motion was filed on October 23, 1995. Oral argument was heard on December 6, 1995 and the motion was considered fully submitted at that time.

### Facts

On June 9, 1992, Magten and Embry filed a Schedule D with the Securities and Exchange Commission (the "SEC") reporting

**312**

the joint beneficial ownership of common stock of Revco.

On March 14, 1994, Magten and Embry filed Amendment No. 7 to schedule 13D, reporting a collective beneficial ownership of 7,409,137 shares of Revco common stock which represented approximately 14.8% of the approximately 50,530,000 shares of the common stock of Revco believed to be outstanding on January 31, 1994. Of this amount, 7,143,174 shares of common stock were owned by the Magten Advisory Clients.

On June 6, 1994, Revco issued additional shares to holders of its common stock pursuant to a distribution of rights governed by a Prospectus (the "Offering"). Pursuant to the terms of the Prospectus, each holder of Common Stock was to receive .305 transferable rights for each share of Common Stock he or she held. Each right gave the holder the right to purchase one share of common stock at $14.00 before July 7, 1994. The offering also contained an "Oversubscription Privilege" whereby each holder who exercised all rights distributed to it could subscribe at the Subscription Price for additional Underlying Shares up to a maximum number of shares equal to twice the number of shares Purchased by such rights holder.

On July 15, 1994, Magten and Embry filed Amendment 8 to the Schedule 13D. As later modified by Amendment 9, it appears that on July 7, 1994, Magten and Embry acquired additional shares of Revco pursuant to the offering. In total, Magten and Embry acquired a beneficial interest in a additional 2,380,128 Revco shares at $14 per share at a total cost of $33,321,792. Of this amount the Magten Advisory Clients acquired 2,259,797 shares at a total cost of $31,637,158.

The Complaint alleges that Magten and Embry had beneficial ownership collectively of 9,936,267 shares of Revco common stock constituting approximately 15% of the shares outstanding as of July 13; the Magten Advisory Clients own 14.4% of the shares outstanding.

A series of sales are reported by the Magten Advisory Clients between July 13, 1994 and February 16, 1995. These include a sale made on July 26, 1994 and ending with a sale made on January 3, 1995. The total number of shares sold by them during this time was 1,587,877 shares, ranging in price per share from $18 to $24.212. At the end of the period, Magten and Embry owned 11.1% of Revco's stock.

The Complaint alleges that Magten, Embry and the Magten Advisory Clients, are a "group" owning more than 10% of the shares of Revco and are therefore subject to the restrictions of Section 16. It is further alleged that Magten and Embry are liable for the profits generated on the Magten Advisory Clients' trades in Revco stock "to the extent of their pecuniary interest in those shares as defined in S.E.C. Rule 16a–1(a)(2)."

*Discussion*

*A. Standards For Summary Judgment*

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Rodriguez v. City of New York,* 72 F.3d 1051 (2d Cir.1995); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Brady v. Town of Colchester,* 863 F.2d 205, 210; *Pittston Warehouse Corp. v. American Motorists Ins. Co.,* 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd,* 954 F.2d 62 (2d Cir.1992).

Summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106

S.Ct. at 2555 (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact").

### B. The Offering was Pro–Rata and Thus Exempt from Section 16 of the Act

Section 16(b) provides in pertinent part that:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months ... shall inure to and be recoverable by the issuer. This subsection shall not be construed to cover ... any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

15 U.S.C. 78p(b) (1981).

Rule 16a–9 reads as follows:

> The following shall be exempt from section 16 of the Act:
>
> (a) The increase or decrease in the number of securities held as a result of a stock split or stock dividend applying equally to all securities of that class; and
>
> (b) the acquisition of rights, such as shareholder or preemptive rights, pursuant to a pro rata grant to all holders of the same class of equity securities registered under Section 12 of the Act.

The dispute centers around whether or not the offering on July 7 qualifies as a pro rata distribution under (b) above and is thus exempt from Section 16 of the Act. For the reasons described below, it was pro rata and the transaction is therefore exempt. As a result, the case is dismissed.

The Supreme Court has advised a literal, narrow reading of Section 16. In *Blau v. Lehman*, 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962), the Court refused to hold a partner in Lehman Brothers liable for the short-swing profits realized by that firm through transactions in the stock of Tidewater Associated Oil Company. The partner was a director of Tidewater and presumably shared in the control of Lehman Brothers. *Blau v. Lehman* provides relatively little direct guidance on the issue in this action, but reveals a reluctance to extend the reach of section 16(b)'s prophylactic rule beyond its literal boundaries. For example, the Court noted the persuasive policy arguments why section 16(b) liability should be broadened to include Lehman Brothers' activities in order to prevent the unfair use of information, but it declined to do so. 368 U.S. at 414, 82 S.Ct. at 457.

The Supreme Court has described Section 16(b) as a flat rule and instructed that "in order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration." *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972). In *Levner v. Saud*, 903 F.Supp. 452, 461 (S.D.N.Y.1994), *aff'd.* 61 F.3d 8 (2d Cir.1995), the Honorable Loretta A. Preska held in keeping with the Supreme Court's instructions in *Emerson*, that there should be a narrow approach to the construction of Sec. 16(b).

Plaintiffs urge the Court to read the purpose behind Section 16 into the Rule of exclusion stated by Rule 16a–9. This would be in contradiction to the explicit instructions of the Supreme Court. Rule 16a–9 states that the "acquisition of rights, such as shareholders or preemptive rights, pursuant to a pro rata grant to all holders of the same class of equity securities ..." is exempt from the provisions of Section 16. The offering at

issue here falls squarely within this exemption. There is no reason to look further. Were the Court to adopt the reading of this section suggested by Plaintiffs, namely that the only rights offerings intended to be covered by this section were those which had to be exercised, section (b) of the rule would be rendered meaningless. Section (a) of the rule covers the circumstances of stock splits and stock dividend distributions. Section (b) addresses the granting of rights. The requirement that this section only applies to "rights" which must be exercised is inconsistent with the plain meaning of the section.

The reason for this rule stated by the SEC when it proposed the exemption supports the literal reading of the section:

> [t]he Commission has concluded that neither Section 16 reporting nor short swing liability should apply ... to grants of rights where the grants are provided pro-rata to all security holders, as these are non discretionary transactions.

SEC Exchange Act Release No. 28869, February 8, 1991.

The Rule is clear and absent the offering of any authority which has interpreted this rule otherwise, summary judgment is granted.

### Conclusion

Consistent with the clear instructions of Rule 16a–9(b) and the discussion above, Defendants' motion is granted and the complaint is dismissed.

It is so ordered.