**In re MERRILL LYNCH & CO., INC., SECURITIES, DERIVATIVE AND ERISA LITIGATION.**

**Pertains to Derivative Action, 07 Civ. 9696 and Lambrecht**

v.

**O'Neal, 09 Civ. 8259.**

**No. 07 Civ. 9633(JSR).**

United States District Court, S.D. New York.

March 28, 2011.

A. Arnold Gershon, Regina Marie Calcaterra, Barrack, Rodos & Bacine, Donald R. Hall, Jr., Frederic Scott Fox, Sr., Jeffrey Philip Campisi, Joel B. Strauss, Robert N. Kaplan, Aviah Cohen–Pierson, Kaplan Fox & Kilsheimer LLP, Jack Gerald Fruchter, Abraham Fruchter & Twersky LLP, David Steven Preminger, Keller Rohrback L.L.P., Lynda J. Grant, Cohen Milstein Sellers & Toll P.L.L.C., Mark Lebovitch, Bernstein Litowitz Berger & Grossmann LLP, David A.P. Brower, Brower Piven, New York, NY, Arthur M. Stock, David B. Anziska, Lane Lanier Vines, Lawrence Jay Lederer, Merrill G. Davidoff, Robin B. Switzenbaum, Berger & Montague, P.C., Jeffrey Alan Barrack, M. Richard Komins, Barrack, Rodos & Bacine, Philadelphia, PA, David Avi Rosenfeld, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, Lynn Lincoln Sarko, Keller Rohrback L.L.P., Seattle, WA, Francis A. Bottini, Pro Hac, Vice, Johnson & Silie, LLP, Bronx, NY, for Plaintiffs.

Jay B. Kasner, Scott D. Musoff, Skadden, Arps, Slate, Meagher & Flom LLP, Stuart Jay Baskin, Shearman & Sterling LLP, Michael Joseph Chepiga, Jason Simon Stone, Paul C. Curnin, Sarah L. Dunn, Simpson Thacher & Bartlett LLP, George S. Canellos, Milbank, Tweed, Hadley & McCloy LLP, Jonathan D. Polkes, Joseph S. Allerhand, Weil, Gotshal & Manges LLP, Antonio Yanez, Jr., Mei Lin Kwan–Gett, Michael Richard Young, Sameer Nitanand Advani, Willkie Farr & Gallagher LLP, Dennis J. Block, Cadwalader, Wickersham & Taft LLP, Julie A. North, Richard W. Clary, Cravath, Swaine & Moore LLP, Eric M. Roth, Ian Boczko, William Edwards, Wachtell, Lipton, Rosen & Katz, Mark Holland, George Arnold Schieren, Mary Kathryn Dulka, Clifford Chance U.S., LLP, Andrew J. Levander, David Scott Hoffner, Dechert, LLP, Brad Scott Karp, Charles Edward Davidow, Claudia Leslie Hammerman, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, James N. Benedict, Andrew Walker Robertson, Milbank, Tweed, Hadley & McCloy LLP, Los Angeles, CA, Richard D. Bernstein, Willkie Farr & Gallagher LLP, Washington, DC, Jennie Boehm Krasner, Dechert LLP, Princeton, NJ, for Defendants.

## OPINION AND ORDER

JED S. RAKOFF, District Judge.

Pending before the Court are two derivative actions arising from the unprecedented losses experienced by Merrill Lynch &

Co., Inc. ("Merrill") as a result of its aggressive investment in collateralized debt obligations ("CDOs") and similar mortgage-backed securities in the period prior to its acquisition by Bank of America ("BofA"). Both actions—a consolidated action known as the *"Derivative Action,"* 07 Civ. 9696, and a later-filed action, *Lambrecht v. O'Neal,* originally filed as 08 Civ. 6582 but now refiled as 09 Civ. 8259—are so called "double-derivative" actions brought by plaintiffs who were shareholders of Merrill at the time of the alleged wrongdoing and are now shareholders of BofA as a result of the Merrill–BofA stock-for-stock swap. Both actions seek to compel the board of directors of BofA, now the 100% owner of the stock in BofA's Merrill subsidiary, to force its Merrill subsidiary to bring various claims against certain of Merrill's officers and directors in connection with Merrill's allegedly reckless investments. The key difference between the two actions is that the plaintiff in the *Derivative Action* argues that any demand upon the BofA board to pursue these claims would be futile, whereas the plaintiff in *Lambrecht* did make a demand upon the BofA board, as well as upon both the pre-merger and post-merger Merrill boards, all of which claims were rejected.

The many defendants in the *Derivative* and *Lambrecht* actions have each filed motions to dismiss the respective complaints on various grounds. After careful consideration, and as explained in detail below, the Court concludes that both actions must be dismissed in their entirety. The Court does not take this step lightly, for the allegations of the complaints, if true, describe the kind of risky behavior by high-ranking financiers that helped create the economic crisis from which so many Americans continue to suffer. But a derivative action is brought for the benefit of the company, and nothing here alleged in the complaints raises a reason to doubt that the board of the relevant company, BofA, was at all times fairly positioned to determine whether bringing an action against Merrill's former officers and directors was in the company's interest.

Specifically, with respect to the *Derivative Action,* the Court concludes that plaintiffs have failed to make a legally adequate showing that the *BofA* Board was so involved in the underlying wrongdoing alleged in the *Derivative* complaint that it could not impartially consider a demand to pursue claims against the *Merrill* officers and directors. And, with respect to the *Lambrecht* action, the Court concludes that plaintiff has failed to carry the considerable burden of showing that the BofA Board's decision not to bring a lawsuit against the Merrill officers and directors was made in bad faith or was based on an unreasonable investigation.

*Background*

Both actions have complicated procedural histories. The *Derivative Action* began as a consolidation of various shareholder derivative actions brought against officers and directors of Merrill as early as 2007.[1]

---

1. The shareholder derivative actions were only one component of numerous related actions originally assigned to the Honorable Leonard B. Sand and combined under the title *In re Merrill Lynch & Co., Inc. Securities, Derivative, and ERISA Litigation. See* 02/17/09 Opinion and Order at 1. As that title indicates, Judge Sand divided most of the actions into three categories—securities class actions, ERISA actions, and derivative actions—and scheduled motion practice with respect to each; but he was then obliged to recuse himself after agreement was reached to merge Merrill into BofA. *Id.* The cases were then reassigned to the undersigned, who scheduled oral argument on the pending motions; but before oral argument could be heard, a tentative settlement was reached in the securities class actions and the ERISA actions. Those settlements were subsequently

Shortly after an agreement was reached on September 14, 2008 to merge Merrill into BofA, the consolidated plaintiffs filed a Second Amended Verified Complaint to incorporate new allegations related to BofA's announcement of its merger with Merrill (the "Merger").

Separately, back in January, 2008, plaintiff N.A. Lambrecht had sent a demand letter to the Merrill Board that had been rejected, following which she had filed her initial Complaint on July 24, 2008, styled as *Lambrecht v. O'Neal*, 08 Civ. 6582. Because Lambrecht, unlike the plaintiffs in the *Derivative Action*, had made a demand upon the Merrill Board, the Court granted Lambrecht leave to separately litigate any motion to dismiss the *Lambrecht* Complaint. *See* 11/13/2008 Order.

Defendants in both actions filed motions to dismiss, and the Court heard oral argument on January 14, 2009. On February 17, 2009, 597 F.Supp.2d 427 (S.D.N.Y. 2009), the Court dismissed both actions on the ground that, as a result of the stock-for-stock swap that implemented BofA's acquisition of Merrill, plaintiffs were no longer Merrill shareholders and therefore lacked standing to pursue derivative claims against Merrill. *See* 02/17/09 Opinion and Order. The dismissal was without prejudice, however, to plaintiffs, who were now BofA shareholders, filing double-derivative actions demanding that BofA, which had become the 100% shareholder of Merrill as a result of the Merger, pursue the asserted claims against the former Merrill officers and directors.

On July 27, 2009, plaintiff Miriam Loveman, the named plaintiff in the consolidated actions that comprise the *Derivative Action*, filed a Verified Third Amended Shareholder Derivative and Class Action Complaint ("Third Amended Complaint") that repleaded her claims as a double derivative action; similarly, on September 29, 2009, plaintiff Nancy Lambrecht filed a new, double derivative action under docket number 09 Civ. 8259.[2] Defendants in both actions again moved to dismiss, claiming that plaintiffs still lacked standing unless they could show (a) that they were shareholders of BofA at the time of the underlying Merrill transactions complained of, and (b) that BofA itself was a shareholder of Merrill during the same period. Skeptical of these objections, but finding that Delaware law provided unsatisfactory guidance on these questions, the Court certified both issues to the Delaware Supreme Court. *See* 03/09/2010 Memorandum Order. On August 27, 2010, the Delaware Supreme Court held that neither of the aforementioned showings was required. *See Lambrecht v. O'Neal*, 3 A.3d 277 (Del. 2010).

After the Delaware Supreme Court rendered its decision, the Court granted both plaintiffs leave to amend their complaints if they wished. Plaintiff Lambrecht filed an Amended Complaint on September 14, 2010, and the defendants named therein subsequently filed motions to dismiss. In the *Derivative Action*, on the other hand, plaintiff Loveman declined the opportunity to amend and rested on her Third Amended Complaint. The *Derivative Action* parties then submitted supplemental briefing addressing the impact of the Delaware Supreme Court's decision. The Court heard oral argument on both the *Lambrecht* motion to dismiss and the *Derivative Action*

approved by the Court, leaving only the derivative actions to be resolved.

**2.** Following the Merger, Lambrecht had sent a demand letter to the BofA Board on November 10, 2008, and had renewed her demand on January 6, 2009. On January 23, 2009, Lambrecht had made a demand upon the board of the new Merrill subsidiary. All these demands were rejected.

supplemental briefing on December 14, 2010.

## Discussion

### 1. The Derivative Action

With this lengthy background in mind, the Court turns first to the *Derivative Action*. In her Third Amended Complaint ("3d Am. Compl."), plaintiff Loveman alleges that Merrill was the lead underwriter of billions of dollars of CDOs secured by risky, undercollateralized subprime mortgages.3d Am. Compl. ¶¶ 20, 98–101. She alleges that the individual defendants named in the complaint—who were directors and officers of Merrill at the times of some or all of these underwritings—were aware of the decline in demand for CDOs and the risks posed by Merrill's overexposure to CDO securities, but that they nonetheless ignored repeated warnings from Merrill's own analysts and executives to lower Merrill's exposure. *Id.* ¶¶ 108, 112, 118, 121, 188, 189. Instead, plaintiff alleges, the individual defendants further escalated Merrill's CDO exposure despite the risk. She alleges, for example, that in 2005 the individual defendants caused Merrill to begin purchasing the AAA tranches of the CDO securities with its own capital to ensure continued receipt of lucrative underwriting fees, *id.* 112; that in January 2007 they caused Merrill to purchase First Franklin bank to gain access to an even larger number of subprime mortgages, *id.* ¶ 124; and that in April 2007 they authorized a $6 billion Stock Repurchase Plan that allowed Merrill to waste a substantial amount of capital on repurchases at what the Merrill Defendants knew or should have known were artificially inflated prices, *id.* ¶¶ 150–55.

Plaintiff alleges that by the end of June 2007, Merrill had accumulated at least $43 billion in net exposure to CDO securities and subprime mortgages. *Id.* ¶ 132. At that point, the credit "crunch" intensified and demand for CDOs completely stagnated. *Id.* ¶ 131. Plaintiff alleges that the individual defendants' wrongful conduct forced Merrill to write down more than $8 billion in the value of its CDOs and led to a $2.2 billion loss in the third quarter of 2007 alone. *Id.* ¶ 24. This escalated still further to a $10.3 billion loss in the fourth quarter. *Id.* ¶ 237. (The first of the lawsuits now consolidated as the *Derivative Action* was filed in late 2007.)

The huge write-downs and losses continued into 2008, leading ultimately to what plaintiff alleges was defendants' "brokering a panic sale" of Merrill to BofA on September 14, 2008. *Id.* at p. 139. Plaintiff alleges that the Merger was approved within a period of less than 48 hours without any substantive due diligence by the BofA Board. *Id.* ¶¶ 4, 291. The terms of the Merger Agreement included indemnification and insurance provisions that insulated the individual defendants from liability "to the fullest extent permitted by applicable law." *Id.* ¶ 5 (quoting Merger Agreement at ¶ 6.6).

On November 3, 2008, Merrill Lynch and BofA filed joint proxy statements with the SEC on Schedule 14A (the "Joint Proxy") seeking shareholder approval for the Merger; this Joint Proxy failed to disclose that Merrill's losses were even greater than previously revealed and that the Merrill and BofA Boards had approved Merrill's payment of billions of dollars in bonuses to Merrill employees, to be paid just prior to the Merger's taking effect on January 1, 2009. *Id.* ¶¶ 303–06. Relying on the materially misleading Joint Proxy, the shareholders of Merrill and BofA voted in favor of the Merger on December 5, 2008. *Id.* ¶¶ 10–14, 303–06, 309.

Plaintiff still further alleges that Merrill's losses continued to "spiral[ ] out of control" in the period between the agree-

ment to merge in September, 2008 and the vote of the two companies' shareholders in early December, yet no action was taken to revise the Joint Proxy or inform shareholders. *Id.* ¶ 9. Plaintiff alleges that by mid-November, prior to the shareholder votes on December 5, 2008, Merrill's pre-tax quarterly losses approached $9 billion and swelled to $19 billion by December 9, 2008. Id. Faced with these unexpected losses, BofA's CEO Kenneth Lewis informed then-Secretary of Treasury Henry Paulson and Federal Reserve Chairman Ben Bernanke that BofA would seek to cancel the Merger pursuant to a Material Adverse Change ("MAC") clause in the Merger Agreement. *Id.* ¶ 10. However, Paulson and Bernanke advised Lewis that if BofA invoked the MAC, BofA's management and Board would be replaced. *Id.* ¶ 11.

> Consequently, although the breaches of fiduciary duty by Merrill Lynch's directors and officers had caused Merrill billions of dollars in damages, including the grant of $3.6 billion in wholly unearned, undeserved and wasteful bonus compensation; and although BofA had full knowledge of Merrill's breaches of fiduciary duty and breaches of covenants and warranties in the Merger Agreement, which would have enabled BofA to terminate the Merger Agreement; the BofA Board elected to proceed with clos-

ing the Merger, indemnifying all Merrill directors and officers, and waiving, in violation of their fiduciary duties, the ability of BofA to directly pursue Merrill Lynch's claims post-Merger against Merrill's officers and directors by providing the Merrill officers and directors with a waiver defense.

*Id.* ¶ 12. The Merger was consummated on January 1, 2009. *Id.*

Based on these allegations, the Third Amended Complaint alleged twelve causes of action (Counts I–XII), all but one of which (Count XII) related to the pre-Merger activities, plus five additional claims (Counts XIII–XVII) based on activities occurring in connection with the Merger and its approval. However, as part of a separate settlement of a putative class action *(County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc.,* CA. No. 4066–VCN) in the Delaware Court of Chancery, Counts XIII–XVIII of the Third Amended Complaint were dismissed with prejudice, on consent, on October 20, 2009. *See* 10/20/09 Stipulation and Order. There thus remain in plaintiff's Third Amended Complaint the following twelve causes of action: Count I: "Breach of Fiduciary Duties of Care, Loyalty and Good Faith" (against the Merrill Defendants[3]); Count II: "Corporate Waste" (against E. Stanley O'Neal and the Merrill Director Defendants[4]); Count III:

---

**3.** The Third Amended Complaint defines the "Merrill Defendants" as the "Merrill Officer Defendants" (defined in this footnote), the "Insider Selling Defendants" (defined in footnote 4) and the "Merrill Director Defendants" (defined in footnote 5). The "Merrill Officer Defendants" are: (1) E. Stanley O'Neal, Merrill's CEO from 2002 to October 30, 2007; (2) Ahmass L. Fakahany, Merrill's COO from May 2007 to February 1, 2008, and Merrill's Co–President from May 16, 2007 to February 1, 2008; (3) Gregory J. Fleming, Merrill's President and COO at all relevant times and its Executive Vice President from October 2003 to May 2007; (4) Jeffrey N. Edwards,

Merrill's Senior Vice President and CFO from March 2005 to December 2007; and (5) John A. Thain, Chairman and CEO of Merrill from 2007 to January 22, 2009.

**4.** The "Merrill Director Defendants" are: (1) John A. Thain, Chairman and CEO of Merrill from 2007 to January 22, 2009; (2) Carol T. Christ, Member of Merrill's Board from 2007 to January 1, 2009; (3) Armando M. Codina, Member of Merrill's Board from 2005 to January 1, 2009; (4) Virgis W. Colbert, Member of Merrill's Board since 2006 and Member of BofA's Board as of January 28, 2009; (5) Alberto Cribiore, Member of Merrill's Board

"Abuse of Control" (against the Merrill Defendants); Count IV: "Gross Mismanagement" (against the Merrill Defendants); Count V: "Contribution, Indemnification and Declaratory Relief" (against the Merrill Defendants); Count VI: "Aiding and Abetting Breach of Fiduciary Duty" (against the Merrill Defendants); Count VII: "Violations of Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934" (against the Merrill Defendants); Count VIII: "Breaches of their Duties of Care, Loyalty, and Candor in Connection with the Purchases of Merrill Lynch Stock by Merrill Lynch Under the Stock Repurchase Plan" (against the Merrill Defendants); Count IX: "Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information" (against the Insider Selling Defendants[5]); Count X: "Violation of the Exchange Act § 10(b) and Rule 10b–5" (against the Insider Selling Defendants); Count XI: "Unjust Enrichment" (against the Merrill Defendants); and Count XII: "Corporate Waste" (against John A. Thain, Gregory J. Fleming and the Director Defendants).

As already noted, no demand was made on any board before the Third Amended Complaint was filed; rather, plaintiff Loveman alleges that making a demand would have been futile. Preliminarily, "Nominal Defendants" Merrill and BofA move to dismiss plaintiff's Third Amended Complaint on the ground that, even though the complaint alleges demand futility with respect to the BofA Board, plaintiff has failed to plead demand futility with respect to the board of the new Merrill subsidiary. *See* Supplemental Memorandum of Law of Nominal Defendants Merrill Lynch & Co., Inc. and Bank of America Corporation in Further Support of Their Motion to Dismiss the Amended Complaint at 16–17. Defendants purport to find such a requirement in the following language from the Delaware Supreme Court's recent decision in *Lambrecht,* 3 A.3d at 286 n. 31:

> In [*Rales v. Blasband,* 634 A.2d 927 (Del.1993),] this Court did identify two of [the procedural requirements that must be satisfied for a shareholder to proceed double derivatively], both relating to a pre-suit demand. With respect to the subsidiary, we held that "[a] plaintiff in a double derivative suit is still required to satisfy the *Aronson [v. Lewis]* test in order to establish that demand on the *subsidiary's* board is futile." *Rales,* 634 A.2d at 934 (emphasis in original). With respect to the parent company, we held that a plaintiff seeking to sue double derivatively must plead facts with sufficient particularity to create a reason to doubt that "as of the time the complaint is filed, the [parent company] board of directors could have properly exercised its independent and disinterested business judgment in responding to a [Court of Chancery Rule 23.1] demand. If the derivative plaintiff

from 2003 to January 1, 2009; (6) John D. Finnegan, Member of Merrill's Board from 2004 to January 1, 2009; (7) Judith Mayhew Jonas, Member of Merrill's Board from 2006 until January 1, 2009; (8) Joseph W. Prueher, Member of Merrill's Board since 2001 and Member of BofA's Board from January 28, 2009 to June 17, 2009; (9) Ann N. Reese, Member of Merrill's Board from 2004 to January 1, 2009; (10) Charles O. Rossotti, Member of Merrill's Board since 2004 and Member of BofA's Board as of January 28, 2009; and (11) Aulana L. Peters, Member of Merrill's Board from 1994 to January 1, 2009.

**5.** The "Insider Selling Defendants" are: (1) E. Stanley O'Neal, Merrill's CEO from 2002 to October 30, 2007; (2) Ahmass L. Fakahany, Merrill's COO from May 2007 to February 1, 2008, and Merrill's Co–President from May 16, 2007 to February 1, 2008; and (3) Gregory J. Fleming, Merrill's President and COO at all relevant times and its executive Vice President from October 2003 to May 2007.

satisfies this burden, then demand will be excused as futile." *Id.*

In response, plaintiff first argues that she *has* pled demand futility with respect to the new Merrill subsidiary. Paragraph 414 of the Third Amended Complaint states: "Plaintiff did not make a demand on the current Merrill board of directors because: (1) all such directors serve at the pleasure of the BofA Board; and (2) such a demand is not required under Delaware law subsequent to the consummation of the Merger." 3d Am. Compl. ¶ 414.

Plaintiff further argues that, in any event, she is not required to plead demand futility with respect to the new Merrill subsidiary. She argues that, "[a]s the 100% shareholder of Merrill, BofA has the power to direct the post-merger Merrill Board to take any action, including initiating a lawsuit against the pre-merger Merrill officers and directors for the conduct alleged in the Complaint." *See* Plaintiff Miriam Loveman's Memorandum of Law in Opposition to the Supplemental Memorandum of Law of Nominal Defendants Merrill Lynch & Co., Inc. and Bank of America Corporation in Further Support of Their Motion to Dismiss the Amended Complaint at 6. Moreover, she argues that when the Third Amended Complaint was filed on July 27, 2009, BofA was the sole shareholder of Merrill; consequently, she had no right at that time to make a demand of the Merrill Board, and any such demand would properly have been ignored by the Merrill board because she was not a shareholder of Merrill. *Id.* Plaintiff ar-

gues that the Delaware Court implicitly recognized the absurdity of requiring plaintiff to allege demand futility as to the Merrill board of directors when it found that "BofA's sole ownership, alone and without more, empowers and entitles BofA, acting through its own board of directors or authorized officers, to use its direct control to cause its wholly owned subsidiary, Merrill Lynch, to do what is necessary to enforce Merrill Lynch's premerger claim." *Lambrecht,* 3 A.3d at 289.[6]

■ Post-*Lambrecht* cases have confirmed the logic of plaintiff's reasoning. In *Hamilton Partners, L.P. v. Englard,* the Delaware Court of Chancery recognized that the *Lambrecht* opinion "openly rests on the practical ability of the sole stockholder to exercise control over the subsidiary." 11 A.3d 1180, 1205 (Del.Ch. 2010). The *Hamilton* Court therefore concluded that the "pragmatic view of the double derivative action adopted in *Lambrecht* has significant implications for pleading demand futility in a double derivative action":

> Because the parent corporation determines, through its 100 percent control, whether or not the subsidiary will sue, "there is no basis in law or logic" to require a separate demand futility analysis at the subsidiary level. 3 A.3d at 288–89. To do so would treat the parent corporation as "if it were a minority shareholder" that only could proceed on behalf of its subsidiary by establishing demand futility, when in reality the par-

---

**6.** *See also Lambrecht,* 3 A.3d at 288 ("Requirement (2)—that BofA must have owned Merrill Lynch stock at the time of the premerger wrongdoing—incorrectly presupposes that to be legally capable of enforcing Merrill Lynch's pre-merger claim, BofA must proceed derivatively against the persons who were Merrill Lynch directors at the time of the alleged wrongdoing. That assumption ig-

nores the legal precept, confirmed in *Lewis v. Anderson* and its progeny, that as a result of the merger, Merrill Lynch's claim becomes the property of BofA as a matter of statutory law. As the sole owner of Merrill Lynch, BofA is not required to proceed derivatively; it may enforce that claim by the direct exercise of its 100 percent control.") (footnote omitted).

ent corporation simply directs its subsidiary to file suit. *Id.* For this reason, the *Lambrecht* Court repeatedly observed that in a double derivative action involving a wholly owned subsidiary, a stockholder plaintiff only must plead demand futility (or otherwise satisfy Rule 23.1) at the parent level.

*Id.* at 1206–07. Accordingly, the court concluded that "[p]ost-Lambrecht, a plaintiff in a double derivative action brought on behalf of a wholly owned subsidiary need only show demand futility or otherwise satisfy Rule 23.1 at the parent level." *Id.* at 1207. A court in this federal district, applying Delaware law (which governs the issues here relevant), recently reached the same conclusion. *See In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation,* No. 08 MDL 1963, 763 F.Supp.2d 423, 540–41, 2011 WL 223540, at *102 (S.D.N.Y. Jan. 19, 2011).

Absent unusual circumstances, this Court must apply the ruling in *Hamilton* (the highest Delaware court to rule on the issue); and, in any event, this Court is in complete agreement with the interpretation of Delaware law set forth in *Hamilton* and in *In re Bear Stearns.* This Court therefore concludes that Loveman need allege futility only with respect to the BofA Board.[7]

With this preliminary issue resolved, the Court must now consider whether plaintiff has pled with particularity facts showing that a demand on the BofA Board would have been futile. Fed.R.Civ.P. 23.1(b)(3); Del. Ch. Ct. R. 23.1(a); *Brehm v. Eisner,* 746 A.2d 244, 254 (Del.2000). In *Rales v. Blasband,* 634 A.2d 927 (Del.1993), the De-

laware Supreme Court held that in a double derivative suit, demand against the parent board will be excused as futile if "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934. The board "must be able to act free of personal financial interest and improper extraneous influences." *Id.* at 935. A director is "interested" if he "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or "a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Id.* at 936. By contrast, however, the "mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterested of directors," but must rise to "a substantial likelihood." *Id.* (quoting *Aronson v. Lewis,* 473 A.2d 805, 815 (Del. 1984)).

Plaintiff argues that members of the BofA Board could not make a disinterested and independent assessment of a demand to pursue the asserted claims against the Merrill Defendants because a majority of the Board on the date the Third Amended Complaint was filed purportedly faced a "substantial likelihood" of liability for events related to the Merger. On the date the Third Amended Complaint was filed, July 27, 2009, the BofA Board consisted of sixteen members, two of whom were on Merrill's pre-Merger board and another ten of whom were on BofA's pre-Merger

---

7. Moreover, even assuming *arguendo* that plaintiff were required to allege demand futility as to the Merrill subsidiary, plaintiff's recitation that she did not make a demand on the board of the Merrill subsidiary because "all such directors serve at the pleasure of the BofA Board" is, in the unusual circumstances of this case, a satisfactory pleading of demand futility with respect to the current Merrill board.

board; thus, plaintiff alleges that "the vast majority of the current members of the BofA Board approved the Merger," 3d Am. Compl. ¶ 397, and have potential liability resulting from that approval. Specifically, plaintiff alleges that these members agreed to pay "$3.6 billion in 2008 bonuses to Merrill lynch [sic] officers and employees without determining the amount of such bonuses or to whom they would be awarded before approving them," *id.* ¶ 401; authorized the issuance of the Joint Proxy that failed to disclose material facts concerning the 2008 Merrill bonuses and Merrill's fourth quarter losses, *id.* ¶¶ 402–03; and failed to terminate the Merger Agreement despite a "material change" because of warnings from Secretary Paulson that the Government would remove the Board members, *id.* ¶¶ 404–06. Plaintiff alleges that in order to pursue the claims against the Merrill Defendants, the BofA Board members would have to admit these failings and thereby render themselves liable for securities law violations and breaches of their fiduciary duties. *See id.* ¶¶ 402–405.

■ But, in fact, no such admissions would be required. The legal adequacy of a complaint's allegations of demand futility must be assessed on a claim-by-claim basis, *see, e.g., In re Citigroup Inc. S'holder Derivative Litig.,* 964 A.2d 106, 121 (Del. Ch.2009); *MCG Capital Corp. v. Maginn,* No. 4521–CC, 2010 WL 1782271, at *17–18, 2010 Del. Ch. LEXIS 87, at *64 (Del.Ch. May 5, 2010), and, with the exception of Count XII (discussed below), all the re-

maining Counts of the Third Amended Complaint relate to pre-Merger activity, as to which the overwhelming majority of the members of the BofA Board have no potential liability. Put another way, while all of the Counts contain boilerplate incorporating by reference all of the previous allegations, the first eleven Counts are carry-overs from the original (pre-Merger) complaints, whereas the last five counts (Counts XIII–XVII), which are expressly premised on the events surrounding the Merger, were all previously dismissed, with prejudice, as part of a settlement. *Compare* 3d Am. Compl. ¶¶ 416–494 (Counts I–XII) with ¶¶ 495–565 (Counts XIII–XVII).

■ Plaintiff fails to explain why the BofA Board would be incapable of performing a disinterested assessment of a demand to sue the Merrill Defendants for their *pre-Merger* conduct (mostly relating to CDO underwritings undertaken in 2006–2007 and stock repurchases or sales also made in 2007). The vast majority of the members of the BofA Board at the time of the filing of the Third Amended Complaint had no connection to this conduct and face no personal liability whatsoever with respect to these claims. Thus, plaintiff has failed to demonstrate demand futility with respect to any of the claims of the Third Amended Complaint that relate to pre-Merger conduct, *i.e.,* Counts I–XI.[8]

The sole count of the Complaint that was not previously dismissed and that relates expressly to Merger-related actions, Count XII, alleges corporate waste in con-

---

**8.** *See White v. Panic,* 793 A.2d 356, 366 (Del. Ch.2000) (finding demand not excused where a majority of the directors did not have any personal interest in the underlying transactions), *aff'd,* 783 A.2d 543, 546 (Del.2001); *Langeland v. JP Morgan Chase & Co.,* C.A. No. 4970–VCS, at *133–34 (Del. Ch. Mar. 1, 2010) ("[T]he people who inherited [the litigation against Bear Stearns' managers] are JP Mor-

gan's board, none of whom are [sic] implicated by the plaintiff in any way of any wrongdoing that went on at these funds. . . . There is nothing in the record that suggests that the . . . JP Morgan board and management don't have every incentive to approach the litigation regarding the Bear Stearns fund in the way that is most advantageous to JP Morgan.").

nection with the bonus payments. As an initial matter, defendants argue that this claim is not properly before the Court because it was not pled in plaintiff's Second Amended Complaint, and the Court's February 17, 2009 Order dismissing that complaint specified that plaintiff could replead based only on the "same underlying allegations." *See* 02/17/09 Opinion and Order at 7.

■ While this might be a sufficient reason in itself to dismiss Count XII, the Court need not reach that issue because the Court finds that plaintiff has failed in any case to demonstrate demand futility with respect to Count XII. It is true that that Count, brought against the Merrill Directors and two individual Merrill defendants for approving such large bonuses in the face of huge losses, also alleges that the BofA Board approved the bonus payments "without determining the amount of such bonuses or to whom they would be awarded before approving them." 3d Am. Compl. ¶ 401. However, a lack of diligence without a personal interest in the bonus payments is insufficient to establish a breach of duty subjecting any member of the BofA Board to liability. And here there is no such liability, because the BofA charter contains an exculpatory clause limiting the personal liability of BofA's directors to "the fullest extent permitted by the General Corporation Law of the State of Delaware." *See* Affidavit of Eric M. Roth (dated September 21, 2009) Ex. B at 25 ¶ 6.

Specifically, Section 102(b)(7) of Delaware General Corporation Law allows for a provision "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title [9]; or (iv) for any transaction from which the director derived an improper personal benefit." It is undisputed that the BofA directors received no personal benefit from Merrill's approval of bonuses for Merrill employees. More generally, BofA's purported failure to conduct adequate due diligence before approving the bonus payments implicates the duty of care rather than the duty of loyalty, especially as there are no allegations of bad faith in this regard. Accordingly, plaintiff has failed to state allegations sufficient to create a reason to doubt that the BofA Board was capable of properly exercising its independent and disinterested business judgment in responding to a demand to pursue Count XII.[10]

Again, it is important to stress that demand futility must be assessed with respect to the particular causes of action that the board would otherwise be asked to consider if demand were made. The fact

---

**9.** Section 174 concerns liability of directors for "unlawful payment of dividend or unlawful stock purchase or redemption; exoneration from liability; contribution among directors; [and] subrogation."

**10.** *See also In re Bank of America Corp. Secs.,* 757 F.Supp.2d 260, 337 (S.D.N.Y.2010) ("Essentially, plaintiffs' allegations amount to a claim that the BofA board's review and ap-

proval of the merger was inadequate. That, however, cannot form the basis of a claim that the directors acted in bad faith. . . . Although the BofA board acted quickly in approving the merger, the Derivative Complaint does not allege that they acted disloyally, or that they were so inadequately informed that they could not exercise their business judgment.").

that the Third Amended Complaint alleges that the members of the BofA board allegedly shared liability with the Merrill defendants for other alleged wrongdoings related to the Merger (such as the failure to adequately disclose Merrill's late 2008 losses, the failure to invoke the "material change" clause, etc.) is an insufficient basis on which to premise demand futility as to claims that constitute Counts I–XII. Indeed, were it otherwise, a plaintiff could always avoid having to make a demand in a double derivative situation by merely alleging that the members of the board of the acquiring company had some knowledge at the time of acquisition of the prior wrongdoings alleged against the officers and directors of the acquired company. Delaware law, which governs demand futility in this case, requires far more than such boot-strapping to excuse the obligation of a demand.[11]

In a variation on such boot-strapping, plaintiff also argues that demand would be futile because, "[p]ursuant to the Merger Agreement, a majority of the BofA Board caused BofA to agree to indemnify and hold harmless each present and former director and officer of Merrill Lynch from liability for matters arising out of or prior to the completion of the merger to the fullest extent provided by applicable law" and agreed "to maintain in place, for a period of six years after completion of the merger, Merrill Lynch's current directors' and officers' liability insurance policy or equivalent policies." 3d Am. Compl. ¶ 399 (emphasis removed). Plaintiff alleges that these provisions in the Merger Agreement "effectively waived on behalf of BofA the ability of BofA to pursue the claims of Merrill Lynch alleged herein" and "made BofA directly liable for the costs of recovery on any such claims by BofA based on the insured versus insured exclusion contained in typical directors' and officers' insurance policies." *Id.*

However, these provisions are standard in merger agreements and, under Delaware law, do not constitute grounds for questioning the BofA Board's disinterestedness or independence. *See, e.g., In re Talley Indus., Inc. S'holders Litig.,* No. Civ.A. 15961, 1998 WL 191939, at *10 n. 4 (Del.Ch. Apr. 13, 1998) ("The indemnification provisions evince no sinister motive on the part of the board. Rather, they are of the type normally found in these situations. The mere existence of this provision without substantial additional evidence is insufficient even to raise an inference that the defendants acted with an improper purpose."); *Globis Partners, L.P. v. Plumtree Software, Inc.,* No. 1577–VCP, 2007 WL 4292024, at *8 (Del.Ch. Nov. 30, 2007) ("There is no basis for inferring the receipt of indemnification benefits is material, or likely to taint the Individual Defendants' judgment."). Moreover, these provisions do not constitute a waiver of BofA's derivative claims because, under Section 145(b) of Delaware General Corporation Law, indemnification would not apply if a person is "adjudged to be liable to the corporation." Additionally, the "insured versus insured exclusion" in the insurance policies is irrelevant to the great majority of the members of the BofA Board, all but two of whom had no relation to Merrill, and courts have held that such provisions do not establish director interest in any event. *Halpert Enters. Inc. v. Harrison,* 362 F.Supp.2d

---

**11.** *See also Seminaris v. Landa,* 662 A.2d 1350, 1354–55 (Del.Ch.1995) (rejecting contention that demand was excused as to fiduciary duty claims against directors because federal securities claims were pending against those same directors, and holding that "[t]his is not the rare case, envisioned by the Supreme Court in *Aronson,* where defendants' actions were so egregious that a substantial likelihood of director liability exists").

426, 433 (S.D.N.Y.2005) ("That the insurance policy indemnifying defendants would not cover their liability were the corporation itself to bring suit against them is also not a sufficiently particular basis for inferring demand futility."). Finally, to the extent that the indemnification relates to Merger and post-Merger activities, these, as noted, are irrelevant to Counts I–XI.

Further still, plaintiff argues that demand would be futile because the BofA Board "prejudged the merits of this action," as demonstrated by the following statement in the Joint Proxy:

> Merrill Lynch and Bank of America believe that the class claims asserted by Merrill Lynch stockholders relating to the merger are without merit and intend to contest them vigorously. Upon consummation of the merger, the plaintiffs who have asserted derivative claims on behalf of Merrill Lynch may lose standing to assert such claims on behalf of Merrill Lynch because they will no longer be Merrill Lynch stockholders.

Compl. ¶ 407. However, it is clear from the face of this statement that the BofA Board believed that the (now-settled) *class claims* were without merit, not the derivative claims that are the subject of this action. Additionally, the fact that the BofA Board was aware that the Merrill Board had already rejected shareholder demands is irrelevant. As stated in the Court's February 17, 2009 Opinion and Order, the BofA Board is altogether different from the Merrill Board, *see* 02/17/09 at 7, and Merrill's rejection of shareholder demands says nothing about whether the BofA Board prejudged the merits of plaintiff's double derivative claims.

Plaintiff also argues that there is "reasonable doubt as to whether the BofA directors could independently and disinterestedly consider a demand to sue other members of the BofA Board due to disabling personal and professional conflicts of interest." 3d Am. Compl. ¶ 411. These conflicts include: Merrill Defendant Reese formerly served on the CBS Corporation board with BofA director Gifford; Gifford currently serves on CBS Board with BofA director Countryman; BofA director Bramble served as a senior executive of MBNA Corporation when it was acquired by BofA and was admittedly not an independent director in 2006–2007; and BofA directors Gifford, Countryman, and May serve as trustees of NSTAR, of which May is Chairman, President, and CEO. *Id.*

This argument is without merit. The relationships between BofA directors are irrelevant to the assessment of whether the BofA Board is sufficiently independent of the former Merrill officers and directors. The sole relationship alleged between a BofA and a Merrill director—the former concurrent CBS Board membership of Reese and Gifford—is insufficient to show Gifford's lack of independence. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del.2004) ("[T]o render a director unable to consider demand, a relationship must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."). Nor does this one instance even remotely suggest that the independence of the Board as a whole is compromised.

■ Finally, plaintiff argues that the BofA Board's rejection of post-Merger demand in *Lambrecht* resolves the issue of whether a demand would have been futile. Compl. ¶ 412. However, under Delaware law, a prior demand rejection does not demonstrate futility unless plaintiff can demonstrate that the first refusal was

wrongful. *See Kaplan v. Peat, Marwick, Mitchell & Co.*, 529 A.2d 254, 257 (Del.Ch. 1987), *aff'd in part and rev'd in part on other grounds*, 540 A.2d 726 (Del. 1988)("The plaintiffs' position in their complaint is that because Chase's Board has previously rejected a prior demand by another shareholder that PMM be sued, a second such demand by plaintiffs would be futile. That argument is legally insufficient, because plaintiffs have not alleged ... that the Board's refusal of the prior demand was wrongful."). It is to this very question that the Court now turns.

### 2. The Lambrecht Action

The factual allegations in the *Lambrecht* Amended Complaint are largely the same as those in the *Derivative Action*, although the *Lambrecht* complaint includes some Merger-related counts and some BofA defendants. Specifically, the Amended Complaint pleads the following causes of action: Count I: "Breach of Fiduciary Duty—Investment Banking Activities" (against the Subprime Defendants [12]); Count II: "Breach of Fiduciary Duty—Concealment of the True Financial Condition of the Company" (against the Subprime Defendants and John A. Thain); Count III: "Aiding and Abetting Breaches of Fiduciary Duty—Concealment of the True Financial Condition of the Company" (against the BofA Defendants [13]); Count IV: "Waste of Corporate Assets—Acquisition of CDOs" (against the Subprime Defendants); Count V: "Breach of Fiduciary Duty—Insider Selling" (against the Insider Selling Defendants [14]); Count VI: "Unjust Enrichment/Constructive Trust" (against the Subprime Defendants and John A. Thain); Count VII: "Breach of Fiduciary Duty—Improper Bonuses" (against the Bonus Defendants [15]); Count VIII: "Waste of Corporate Assets—Improper Bonuses" (against the Bonus Defendants); Count IX: "Aiding and Abetting Breaches of Fiduciary Duty—Improper Bonuses" (against Defendants Lewis and Curl); and Count X: "Unjust Enrichment/ Constructive Trust" (against the Bonus Defendants).

As previously explained, the distinguishing element of the *Lambrecht* action is the

---

12. The "Subprime Defendants" are: (1) Jeffrey N. Edwards, Merrill's Senior Vice President and Chief Financial Officer until December 2007; (2) Ahmass L. Fakahany, Merrill's Co–Chief Operating Officer and Co–President from May 2007 until February 2008; (3) Do Woo "Dow" Kim, Merrill's Executive Vice-President and Co–President of Merrill's Global Markets and Investment Banking Group until May 2007; (4) Douglas J. Mallach, Merrill's Co-head of Fixed Income, Currencies & Commodities ("FICC") in the Americas until October 2007; (5) E. Stanley O'Neal, Merrill's Chairman and CEO through October 30, 2007; (6) Osman Semerci, Merrill's Global Head of FICC from mid–2006 until October 2007; (7) Gregory J. Fleming, Merrill's Co-President of the Global Markets and Investment Banking Group until November 2007, Merrill's COO from May 16, 2007 to February 1, 2008, and Merrill's President and COO from February 1, 2008 to January 2009.

13. The "BofA Defendants" are: (1) Gregory L. Curl, BofA's Global Strategic Development and Planning Executive until June 2009 and BofA's Chief Risk Officer as of the filing of complaint; (2) Brian T. Moynihan, BofA's General Counsel from December 2008 to January 2009 and BofA's CEO as of the filing of the complaint; (3) Joseph L. Price, BofA's CFO at all pertinent times until January 2010; and (4) Kenneth D. Lewis, BofA's CEO at all pertinent times and Chairman of the BofA Board until April 29, 2009.

14. The "Insider Selling Defendants" are: (1) Ahmass L. Fakahany; (2) Do Woo "Dow" Kim; (3) E. Stanley O'Neal; and (4) Gregory J. Fleming.

15. The "Bonus Defendants" are: (1) John A. Thain, Merrill's CEO and Chairman from December 2007 to January 1, 2009; and (2) Gregory J. Fleming.

fact that the plaintiff made several demands upon the various boards. On January 22, 2008, plaintiff sent a letter to the Merrill Board demanding that it commence legal proceedings against Merrill's present and former senior management, including Stanley O'Neal and Ahmass Fakahany, in connection with the "massive, multi-year mismanagement" of Merrill. Am. Compl. ¶ 141; Am. Compl. Ex. A at 1. By letter dated May 1, 2008, the Merrill Lynch Board rejected the demand. Am. Compl. ¶ 142; Am. Compl. Ex. B. On November 10, 2008, plaintiff sent a letter to the BofA Board demanding that it cause BofA and/or Merrill to initiate legal proceedings against Merrill's present and former directors. Am. Compl. ¶ 144. On January 6, 2009, plaintiff renewed her demand. *Id.* ¶ 145; Am. Compl. Ex. C. On January 23, 2009, plaintiff made a demand upon the new Merrill subsidiary that incorporated the requests made in the previous demands upon the BofA and Merrill Boards, and also brought to the attention of the BofA and Merrill Boards the preliminary settlement of the factually-related securities fraud litigation. Am. Compl. ¶ 146; Am. Compl. Ex. E. On July 15, 2009, BofA informed plaintiff that it would not cause Merrill to pursue the claims belonging to Merrill. Plaintiff argues that BofA's refusal of her demands was wrongful.

■■■ A board's decision to reject a demand is entitled to the benefit of the business judgment rule. *See, e.g., Levine v. Smith,* 591 A.2d 194, 209 (Del.1991), *overruled in part on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000). The business judgment rule presumes that the board made its decision "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Spiegel v. Buntrock,* 571 A.2d 767, 774 (Del.

1990). To demonstrate that the board's refusal of a demand was wrongful, "the shareholder plaintiff is required to allege with particularity legally sufficient reasons to call into question the validity of the Board of Directors' exercise of business judgment." *Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud,* 903 F.Supp. 452, 457 (S.D.N.Y.1994) (internal quotation marks and citations omitted), *aff'd,* 61 F.3d 8 (2d Cir.1995). Under Delaware law, the directors' decision "will be shielded by the business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation." *RCM Sec. Fund, Inc. v. Stanton,* 928 F.2d 1318, 1328 (2d Cir.1991). The *RCM* Court noted that few, if any, plaintiffs surmount this obstacle. *Id. See also FLI Deep Marine LLC v. McKim,* C.A. No. 4138–VCN, 2009 WL 1204363, at *3, 2009 Del.Ch. LEXIS 56, at *8 (Del.Ch.2009) ("[W]here a shareholder's demand has been refused, this Court only examines the good faith and reasonableness of the board's investigation.").

Lambrecht contends she has "pled that the refusal was wrongful because the Board did not give serious consideration to her demands, as evidenced by the fact that its consideration of the demands (if any) was commenced, and concluded, at a single meeting, and the response was nothing more than an essentially boilerplate rejection letter." Plaintiff's Memorandum in Opposition to Motions to Dismiss ("Lambrecht Opp'n") at 16 (citing Am. Compl. ¶¶ 148–49). She further contends that BofA's July 15, 2009 rejection letter makes no reference to any investigation into the merit of plaintiff's claims, and upon plaintiff's "information and belief, no such investigation took place." Am. Compl. ¶¶ 149–150. According to plaintiff, while the focus of a court's "wrongful refusal"

analysis is on procedures rather than the outcome of the investigation, "it does not necessarily follow that the Court's inquiry should be entirely divorced from considering the nature (if not necessarily the merits, *per se* ) of the underlying claims." Lambrecht Opp'n at 16. Lambrecht argues that courts have recognized that there is no such thing as a "one size fits all" generic response appropriate for all litigation demands, and that what constitutes a reasonable investigation will vary depending on the precise factual circumstances. *See Baron v. Siff,* No. 15152, 1997 WL 666973, at *3 (Del.Ch. Oct. 17, 1997) ("The amount of time needed for a response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand.") (internal quotation mark omitted); *Miller v. Loucks,* No. 91 C 6539, 1992 WL 329313, at *8 (N.D.Ill. Nov. 5, 1992) (where the underlying allegations concerned "egregious criminal conduct," the Board's "decision to refuse demand was not protected by the business judgment rule" regardless of what procedures were employed).

In this case, Lambrecht argues that given the "historic calamity that occurred at Merrill Lynch," her demand letter merited more than just a boilerplate response. Lambrecht Opp'n at 19. In support of this argument, she cites to cases in which the boards at issue performed more thorough investigations than the one seemingly undertaken in this case. *See, e.g., Halpert Enters. Inc. v. Harrison,* No. 07–1144–cv, 2008 WL 4585466, at *3 (2d Cir. Oct. 15, 2008). She also contends that BofA's response to her demands compares unfavorably to a contemporaneous investigation performed by largely the same BofA

Board in response to similar demands; in that instance, plaintiff alleges that the BofA Board created an independent committee which conducted a detailed and extensive investigation. Am. Compl.¶ 151. Finally, plaintiff makes a number of allegations to the effect that some of the Board members were incapable of independently and disinterestedly considering plaintiff's demands, and also challenges the substance of the BofA Board's decision not to pursue her claims. *See, e.g.,* Am. Compl. ¶¶ 157–169.

■ Plaintiff's arguments concerning the purported lack of independence of some or all of the BofA Board members are easily dispensed with. It is well-established that "where a shareholder instead chooses to make a demand upon a board of directors, she concedes the independence of a majority of the board." *FLI Deep Marine LLC v. McKim,* C.A. No. 4138–VCN, 2009 WL 1204363, at *3, 2009 Del. Ch. LEXIS 56, at *8 (Del.Ch.2009) ("The Plaintiffs in this action made presuit demand on DMT's board of directors. As a result, they have conclusively conceded the independence of the Board, and are precluded from now arguing that demand should be excused because the directors are conflicted.").[16] Accordingly, there is no merit to the allegation that the BofA Board's refusal was wrongful because its members were not independent.

■ Similarly, Delaware law does not permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong. *See Brehm v. Eisner,* 746 A.2d 244, 264 (Del.2000) (substantive due care is a concept "foreign to the business judgment rule"); *Kamen v. Kemper Fin.*

---

**16.** *See also Scattered Corp. v. Chicago Stock Exch.,* 701 A.2d 70, 76 (Del.1997), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d

244 (2000) (once demand is made, the issue is not one of board independence but of good faith and reasonable investigation).

*Servs.,* 500 U.S. 90, 105, 111 S.Ct. 1711, 114 L.Ed.2d 152 (U.S.1991) (the receipt of a demand makes it "crystal clear to the directors of a Delaware corporation that the decision whether to commit the corporation to litigation lies solely in their discretion"). Thus, plaintiff's contention that "[t]he reasons asserted by BofA for not bringing suit as to all of the bases as alleged by Plaintiff are not credible," Am. Compl. ¶ 165, does not implicate the reasonableness of the Board's investigation and does not demonstrate of itself that the BofA Board's refusal was made in bad faith.

 The remainder of the complaint's allegations on this issue fail to satisfy the requirements of Rule 23.1(b) of the Federal Rules of Civil Procedure, which require the plaintiff to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." *See* Fed.R.Civ.P.R. 23.1(b)(3).[17] *See also Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud,* 903 F.Supp. 452, 457 (S.D.N.Y.1994) ("In a shareholder derivative suit, in order to conform to the requirements of Rule 23.1, the shareholder plaintiff is required to allege with particularity 'legally sufficient reasons to call into question the validity of the Board of Directors' exercise of business judgment.'") (quoting *Allison on behalf of General Motors Corp. v. General*

*Motors Corp.,* 604 F.Supp. 1106, 1121 (D.Del.1985)).

Plaintiff's contention that the BofA Board acted in bad faith and undertook no investigation of her claims is almost entirely conclusory. It is well-established that conclusory allegations are insufficient to overcome the business judgment rule. *See, e.g., Sterling v. Mulholland,* No. 98 Civ. 3808, 1998 WL 879714, at *2–3, 1998 U.S. Dist. LEXIS 19550, at *6–8 (S.D.N.Y. Dec. 16, 1998.); *Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud,* 903 F.Supp. 452, 457 (S.D.N.Y.1994); *In re General Motors Class E Stock Buyout Sec. Litig.,* 790 F.Supp. 77, 81 (D.Del.1992) ("Plaintiffs rebut this evidence and the attending business judgment presumption accorded a refusal of demand with allegations that do no more than state, in conclusory fashion, plaintiffs' ultimate contentions: that GM's Board failed in the first instance to conduct an adequate inquiry as to the merits of the underlying transaction and failed subsequently to conduct any inquiry in response to plaintiffs' prelitigation demands."); *Levine v. Smith,* 591 A.2d 194, 214 (Del.1991), *overruled in part on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000); *Baron v. Siff,* No. 15152, 1997 WL 666973, at *3, 1997 Del. Ch. LEXIS 152, at *11 (Del. Ch. Oct. 17, 1997). Yet, by way of specifics, plaintiff relies almost entirely on the text of the BofA Board's July 15, 2009 letter rejecting plaintiff's demand, a letter she describes as inadequate boilerplate. The letter itself, however, belies plaintiff's assertions. *See*

---

**17.** Lambrecht's allegations similarly fail to satisfy the parallel standard of Chancery Rule 23.1, which is "either identical to or consistent with the principles behind Federal R. Civ. P. 23.1." *Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud,* 903 F.Supp. 452, 456 n. 4 (S.D.N.Y.1994). *See also Allison on Behalf of G.M.C. v. General Motors Corp.,* 604 F.Supp. 1106, 1116 n. 11 (D.Del.1985) ("In practical terms, it is important that the result

of applying Chancery Rule 23.1 is the same as the application of Fed.R.Civ.P. 23.1. It would be disquieting if a derivative plaintiff suing a Delaware corporation could achieve a different answer as to whether demand is excused as futile simply by filing, quite literally, 'across the street' in Chancery Court."), *aff'd,* 782 F.2d 1026 (3d Cir.1985). Accordingly, cases interpreting both standards are equally applicable to the instant question.

Am. Compl. Ex. F. The letter explains that before reaching its decision, "both the Audit Committee and the full BAC Board considered the potential adverse effect of pursuing the claims outlined in your letters on the defenses of BAC's wholly owned subsidiary, Merrill Lynch & Co., Inc. ('Merrill Lynch') in certain pending litigation and governmental inquiries and weighed that against the likelihood of recovering the amounts sought in those proceedings from the persons your letters propose that BAC and Merrill Lynch sue." Letter from Alice Herald, Deputy General Counsel and Corporate Secretary, to Jonathan W. Cuneo, counsel for N.A. Lambrecht (July 15, 2009) (Am. Compl. Ex. F) at 1. The letter further explains that Merrill was then named as a defendant in a separate federal securities class action and in a class action alleging violations of ERISA. Id. The letter notes that although Merrill had entered into preliminary settlement agreements with respect to these actions, each settlement remained subject to court approval. Id. at 2. Additionally, objections had been filed to both settlements, and a number of shareholders had opted out of the proposed class. *Id.* The letter explains that Merrill also faced "ongoing governmental inquiries relating to Merrill Lynch's CDO business, including inquiries by agencies with the authority to seek the imposition of various penalties against Merrill Lynch." *Id.*

Against this background of numerous proceedings and allegations the Board has already had occasion to consider, the letter states:

> The Audit Committee and the BAC Board have concluded that commencing the litigation outlined in your letters would impair Merrill Lynch's defenses in these various proceedings. For example, your letters demand that BAC cause Merrill Lynch to bring suit against certain of its former officers and

directors for, among other things, allegedly engaging "in a continued course of deception by concealing its risk exposure from investors and the public, which has subjected Merrill [Lynch] to considerable exposure to securities fraud claims and other litigation." The plaintiffs in the securities and ERISA actions would likely argue that Merrill Lynch's assertion of such a claim constitutes an admission of liability by Merrill Lynch. Moreover, to prevail against the former Merrill Lynch officers and directors referenced in your letters, Merrill Lynch would need to allege and prove facts similar to those that the securities and ERISA plaintiffs have been trying to establish in their cases. Similarly, the various governmental agencies that have made inquiries with respect to Merrill's CDO business would likely seek to use any litigation papers filed by Merrill Lynch against its former officers and directors against Merrill Lynch itself.

*Id.*

The letter further explains that "[b]oth the Audit Committee and the full BAC Board also considered the amount of damages claimed in the pending civil litigation against Merill Lynch and the likelihood of recovering such amounts from the former Merrill Lynch officers and directors in the lawsuit proposed by your letters." *Id.* In performing this cost-benefit analysis, the BofA Board and the audit committee considered the fact that Merrill's certificate of incorporation contains a provision that exculpates its directors from personal liability, except for liability due to "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law." *Id.* Additionally, the letter notes that legal theory of "mismanagement" outlined in plaintiff's letters has been characterized by Delaware courts as "possibly the most difficult theory in cor-

poration law upon which a plaintiff might hope to win a judgment." *Id.* (internal quotations omitted). The letter concludes that "it is not in BAC's interest to cause Merrill Lynch to pursue such claims at this time," but notes that the "Audit Committee will nevertheless continue to monitor these proceedings." *Id.*

While the letter makes no mention of the amount of time the BofA Board and Audit Committee spent considering plaintiff's claims, other than its statement that the BofA Board considered plaintiff's letters "at its June 25, 2009 meeting," *id.* at 1, the BofA Board had already considered and rejected a similar demand by the plaintiff on May 1, 2008. Moreover, there is every reason to believe that the BofA Board was already quite familiar with the allegations in plaintiff's letters from its consideration of the various other proceedings referred to in the letters.

Under these circumstances, it does not appear that the investigation and analysis described in the BofA rejection letter was unreasonable or conducted in bad faith, especially as there is no prescribed procedure or form a Board must follow when responding to a demand letter.[18] Since plaintiff has offered nothing but the text of this letter and her conclusory assertions that the BofA Board's investigation was inadequate, the Court concludes that the allegations in plaintiff's Amended Complaint are insufficient to overcome the presumption of the business judgment rule.

Plaintiff's makes two additional arguments, neither of which is persuasive. First, plaintiff contends that even if the Court finds that BofA's refusal was not wrongful as to most of her claims, it should consider demand refusal on a claim-by-claim basis and conclude that BofA's refusal was wrongful as to claims pertaining to Merrill's acquisition of CDOs. Lambrecht Opp'n at 23. Plaintiff argues that the BofA Board could pursue this non-fraud claim without exposing Merrill to liability in other litigation. This argument merits little discussion. As explained above, the proper inquiry concerns the reasonableness and good faith of the Board's investigation of any and all claims, not the substance of the Board's decision on any or all claims. Since, as to any particular claim, as well as the claims overall, plaintiff has failed to provide a basis for concluding that the investigation was anything less than reasonable and conducted in good faith, the business judgment rule shields the BofA Board from further inquiry.

Second, plaintiff argues that her demand letters made no demands related to Merrill's payment of bonuses in December 2008, and that the Court should therefore not treat those claims as having been rejected by the Board but rather as subject to demand futility analysis. Lambrecht Opp'n at 28. This argument is refuted by the plain language of Lambrecht's demand letters. Plaintiff's January 23, 2009 letter, which was expressly intended to "renew and supplement prior demands served upon the Boards of Bank of American and Old ML *in light of recent events*," *see* Letter from Jonathan W. Cuneo, Counsel for N.A. Lambrecht, to the Boards of Directors of Bank of America and Merrill Lynch (January 23, 2009) (Am. Compl. Ex. E) (emphasis added), reiterated plaintiff's November 10, 2008 demand seeking to re-

---

18. *See, e.g., Baron v. Siff,* No. 15152, 1997 WL 666973, at *3, 1997 Del. Ch. LEXIS 152, at *10 (Del. Ch. Oct. 17, 1997) ("There is no prescribed procedure that a Board must follow when investigating a demand under Rule 23.1. The refusal letter's failure to state that the Board held a meeting and failure to contain a point-by-point response to all allegations in the demand letter does not stand for the proposition that the Board did not consider the demand before refusing it.") (footnote omitted).

cover excessive "fees and/or other compensation" and "any salaries, bonuses, severance pay and/or 'golden parachutes' " from former and present Merrill Lynch officers. Letter from Jonathan W. Cuneo, Counsel for N.A. Lambrecht, to the Members of the Board of Bank of America (November 10, 2008) (Am. Compl. Ex. D). On any fair reading, this combination of demands constituted, *inter alia*, a demand concerning the 2008 bonuses.

Moreover, courts have held that "[p]ermitting a stockholder to demand action involving only one theory or remedy and to argue later that demand is excused as to other legal theories or remedies arising out of the same set of circumstances as set forth in the demand letter would create an undue risk of harassment." *Grimes v. Donald*, 673 A.2d 1207, 1220 (Del.1996), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del.2000). *See also Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud*, 903 F.Supp. 452, 457 (S.D.N.Y.1994) ("Once the shareholder plaintiff makes a demand upon the directors before filing suit, he or she loses the ability to claim demand futility. . . ."). Additionally, even if plaintiff had not made a demand as to the 2008 bonuses, her demand futility argument would be dismissed for the same reasons as those in the *Derivative Action*.

Having concluded that the instant complaint fails to demonstrate that the BofA Board's refusal of plaintiff's demands was wrongful or may otherwise be obviated, the Court must now consider plaintiff's request that the Court defer its final decision until plaintiff has had the opportunity to obtain the document inspection "to which she is entitled in the Section 220 Action." [19] Lambrecht Opp'n at 27. In other words, Lambrecht requests that the Court stay this action for an indeterminate amount of time and then grant her leave to replead her complaint a *fourth* time, after which there would be still another round of motion practice in a case that has now been ongoing for more than two and a half years. This the Court is unwilling to do, especially in light of the fact that the Court made clear to Lambrecht that "this is your last bite at that apple" when it granted her leave to replead a third time. *See* 03/01/2010 Transcript at 37. Moreover, plaintiff chose to bring this action before she brought her Section 220 Action, thereby voluntarily incurring the risk that she would not obtain the requested discovery in time to re-draft her pleadings. The Court is responsible for the swift and efficient management of its own docket, and it is certainly not obliged to cool its heels while plaintiff attempts to once again correct flaws in a complaint that has already been thrice amended. Nor would it be fair to defendants to further prolong this case.

Further still, the Court concludes that, in any event, granting Lambrecht leave to replead would be futile. Even if discovery confirms that the BofA Board rejected plaintiff's letter after only one meeting, the text of July 15, 2009 letter makes clear that the plaintiff will be unable to overcome the "considerable burden of showing

---

**19.** On February 2, 2009, plaintiff demanded that the BofA Board produce certain corporate books and records for inspection pursuant 8 Del. C. § 220. Lambrecht Opp'n at 10. When BofA refused this demand, plaintiff initiated the "Section 220 Action" in the Supreme Court of the State of New York for the County of New York (the "State Court"). *See N.A. Lambrecht v. Bank of America Corporation*, Index No. 650182/09. Plaintiff subsequently filed a motion for partial summary judgment, and BofA filed a cross-motion for summary judgment. Lambrecht Opp'n at 10. On October 4, 2010, the State Court entered an order denying plaintiff's motion for partial summary judgment and granting BofA's motion for summary judgment. *Id.* at 11. *See Lambrecht v. Bank of Am. Corp.*, No. 650182/09E, at 8 (N.Y.Sup.Ct. Oct. 1, 2010). Plaintiff has since appealed the ruling.

351

that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation." *RCM Sec. Fund, Inc. v. Stanton,* 928 F.2d 1318, 1328 (2d Cir.1991).

The Court has considered the other arguments advanced by the plaintiffs in both actions and finds them without merit. Accordingly, the Court concludes that demand in the *Derivative Action* was not excused, and that the BofA Board did not wrongfully refuse Lambrecht's demands. Having concluded that both actions fail on these threshold issues, it follows that both complaints must be dismissed in their entirety. The Court therefore grants the motions to dismiss submitted in both actions, and instructs the Clerk of the Court to enter final judgment in both the *Derivative Action,* 07 Civ. 9696, and *Lambrecht v. O'Neal,* 09 Civ. 8259, dismissing the complaints with prejudice.

SO ORDERED.